Antonio Pillich y Rafael Fernández, personalmente y en representación del derecho e interés de otros de la misma clase, peticionarios, *v.* Patrick J. Fitzsimmons, Auditor de Puerto Rico, y Rafael Buscaglia, Tesorero de Puerto Rico, querellados.

Núm. 8385.—*Sometido:* Junio 27, 1941. *Resuelto:* Julio 8, 1941.

*Hon. Procurador General Interino, Emilio de Aldrey, y R. García Cintrón, Subprocurador Auxiliar,* abogados de los apelantes; *C. Iriarte, F. Fernández Cuyar, H. González Blanes y Eduardo Ortiz Reyes,* abogados de los apelados.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Los peticionarios y las personas por ellos representadas fueron nombrados por los Presidentes respectivos de las Cá-

maras legislativas para prestar servicios en ellas como empleados temporeros, a partir del primero de julio de 1938. Se dispuso que los sueldos correspondientes fuesen pagados con cargo a la partida de "Imprevistos" consignada para cada una de las Cámaras legislativas en la Ley de presupuesto general de gastos para el sostenimiento del Gobierno Insular para el año fiscal 1938–39. Desde la expresada fecha y hasta el 31 de octubre siguiente, dichos empleados prestaron sus servicios y recibieron mensualmente la compensación fijádales por los Presidentes de los cuerpos legislativos. A partir del mes de noviembre siguiente, y hasta el 26 de abril de 1939, las personas así nombradas continuaron desempeñando sus respectivos cargos sin recibir el pago de sus salarios, por haberse negado el Auditor de Puerto Rico a expedir los correspondientes libramientos de pago, basando su negativa en una opinión del Procurador General y en la sentencia dictada por esta Corte en el caso de *Ortiz Reyes v. MacLeod,* 56 D.P.R. 871.

En vista de la actitud asumida por el auditor, la Asamblea Legislativa de Puerto Rico aprobó la Ley núm. 9, de 3 de abril de 1940 (pág. 297), titulada como sigue: "Para ratificar y convalidar las actuaciones del Presidente del Senado de Puerto Rico y el *Speaker* de la Cámara de Representantes de Puerto Rico al designar como designaron, so color de autoridad, los empleados temporeros del Senado y la Cámara de Representantes de Puerto Rico con cargo a las partidas de imprevistos de dichos cuerpos legislativos, año económico 1938–39; haciendo suyas la Asamblea Legislativa de Puerto Rico dichas actuaciones, considerándolas como si en su oportunidad las hubiera autorizado por ley, y/o reconociendo la obligación moral de El Pueblo de Puerto Rico de pagar los servicios así prestados por los referidos empleados; y para que el pago del importe de dichos servicios así prestados desde el primero de noviembre de 1938 hasta el 26 de abril de 1939, ambos inclusive, sea efectuado por el Auditor y el

Tesorero de Puerto Rico según se expresa en esta ley, una vez se dicte resolución en remedio declarativo por corte competente en cuanto a la validez de leyes curativas o remediales aprobadas por la Asamblea Legislativa de Puerto Rico; asignando los fondos necesarios a tal objeto, y para otros fines.''

De conformidad con la citada ley, los secretarios respectivos del Senado y de la Cámara de Representantes remitieron al auditor las nóminas para el pago de los servicios prestados por dichos empleados, cuya compensación total desde noviembre 1, 1938, hasta abril 26, 1939, fué consignada en la citada ley núm. 9, siendo devueltas las nóminas por el auditor, alegando que la sección 3 de la citada ley prescribe que el pago a dichos empleados no deberá hacèrse hasta que una corte competente dicte una sentencia declaratoria sosteniendo su validez, y que esa condición no se había cumplido todavía. Con tal motivo, se presentó en la corte inferior la demanda de este caso en solicitud de un decreto declaratorio de que la citada ley núm. 9 es constitucional. El caso quedó sometido a la consideración de la corte sentenciadora mediante una estipulación oportunamente aprobada por dicho tribunal, en la que los querellados admitieron todos los hechos alegados en la petición o demanda y solicitaron ambas partes que se resolviese: (*a*) si la Asamblea Legislativa de Puerto Rico tiene facultad para aprobar leyes reparadoras (*curative statutes*); y (b) si la ley núm. 9, aprobada el 3 de abril de 1940, es eficaz para obligar a los querellados a verificar los pagos prescritos por dicha ley.

El 12 de mayo último la corte inferior, por los fundamentos expuestos en la opinión que unió a los autos, dictó la siguiente sentencia:

''Por los fundamentos de la opinión unida a los autos, se declara válida la ley núm. 9 de la Cuarta Legislatura Ordinaria de la Décimocuarta Asamblea Legislativa de Puerto Rico, aprobada el día 3 de abril de 1940, con excepción de la disposición de dicha ley que se copia a continuación y se declara nula:

"""...con excepción de que los pagos que por ella se decretan no se harán efectivos hasta tanto se dicte resolución en remedio declarativo por corte competente en cuanto a la validez de leyes reparadoras o remediales (curative statutes) aprobadas por la Asamblea Legislativa de Puerto Rico;'

"Dada en San Juan, Puerto Rico, hoy día 12 de mayo de 1941.

(Fdo.)    Jorge L. Córdova
Juez de Distrito."

La contención de los apelantes descansa en el párrafo undécimo del artículo 34 de la Ley Orgánica, que dice:

"La Asamblea Legislativa prescribirá por ley el número, deberes y remuneración de los funcionarios y empleados de cada Cámara; y ningún pago con fondos del Tesoro por servicios a la Asamblea Legislativa, se hará ni se autorizará en modo alguno a favor de ninguna persona, a no ser un funcionario o empleado en servicio activo elegido o nombrado en cumplimiento de la ley."

▇▇▇ Ante tan terminante precepto, no cabe dudar que los Presidentes de una y otra Cámara asumieron una facultad expresamente conferida a la Asamblea y no a ellos, y por consiguiente realizaron un acto nulo por inconstitucional. De igual modo es incuestionable que la Asamblea, de conformidad con el mismo precepto, pudo originalmente prescribir por ley el número, deberes y remuneración de los peticionarios y delegar en sus presidentes la facultad de nombrarlos para sus cámaras respectivas.

Siendo ello así, la próxima cuestión a determinar es si pudiendo la Asamblea originalmente aprobar tal ley, puede también, mediante una ley reparadora (*curative act*) convalidar el acto que en violación de la Carta Orgánica realizaron sus presidentes. No existe precepto alguno en la Ley Orgánica ni en ninguna otra que lo prohiba. Por el contrario, la regla prevaleciente tanto en los Estados como en el Gobierno Federal es al efecto de que el poder legislativo puede aprobar cualquier ley reparadora (*remedial statute*) convalidando una ley o actuación, siempre que dicha legislatura originalmente hubiese podido aprobar la legislación con-

validada y siempre que la ley reparadora no menoscabe obligaciones contractuales ni derechos adquiridos (*vested rights*) al amparo de una legislación anterior. *Stranger* v. *City of Bridgeport,* 116 A.L.R. 1031; *Eaton* v. *Davis,* 10 S. E. (2) 893, citado por los apelados; 5 Cornell Law Quarterly, 66–67; 51 H. L. R. 1073, y muy especialmente el reciente caso de *Swayne & Hoyt, Ltd.* v. *U. S.,* (1937) 300 U. S. 297, 301.

En el caso últimamente citado se impugnó la validez de una Orden Ejecutiva del Presidente, número 6166, a virtud de la cual dicho funcionario abolió la agencia gubernamental denominada "Shipping Board", y transfirió sus funciones al Departamento de Comercio. Posteriormente el Congreso ratificó la Orden Ejecutiva del Presidente. Se alegaba por la apelante que el Congreso carecía de poderes para delegar en el Presidente la facultad de hacer dicha transferencia y que al así actuar el Presidente, infringió la Constitución. Resolviendo la cuestión planteada, la Corte Suprema de Estados Unidos, por voz de su hoy Juez Presidente Sr. Stone, dijo:

"Es innecesario resolver si fué eficaz o no la transferencia verificada por medio de la Orden Ejecutiva, pues opinamos que como el Congreso tenía la facultad de abolir el *Shipping Board* y disponer que sus funciones fuesen ejercitadas por el Secretario, tenía también la facultad para convalidar y ratificar las actuaciones del Presidente en el sentido indicado, aunque dicho funcionario hubiese llevado a cabo la transferencia mediante una orden ejecutiva nula.

"Está establecido que el Congreso, a través de una ley que por cualquier otra razón no sea inapropiada, puede ratificar actos que originalmente hubiera podido autorizar." (Citas.)

La ley núm. 9 de 1940, al ratificar las actuaciones nulas de los Presidentes de las Cámaras legislativas, no menoscabó derechos contractuales ni derechos adquiridos al amparo de una legislación anterior, pues El Pueblo de Puerto Rico, única entidad que podría aparentemente resultar perjudicada por dicha ley, no tiene ningún derecho a beneficiarse del trabajo de los peticionarios sin la debida compensación.

█ Por último, convenimos con la corte sentenciadora en que aquella parte de la ley núm. 9 de 1940 que requiere como condición precedente a su vigencia que su constitucionalidad sea previamente sostenida por una corte de jurisdicción competente, es inconstitucional por constituir una indebida delegación del poder legislativo al judicial.

Opinando como opinamos que la ley núm. 9 de 1940 es válida con excepción del párrafo últimamente indicado—cuya inconstitucionalidad no afecta el resto de la ley—*procede la confirmación de la sentencia apelada.*