Sunland Biscuit Company, Inc., recurrente, *v.* Junta de Salario Mínimo de Puerto Rico, demandada.

Núm. 103.—*Sometido:* Noviembre 4, 1947. *Resuelto:* Marzo 10, 1948.

*Luis E. Dubón* y *Otero Suro & Otero Suro,* abogados de la recurrente; *Lino· J. Saldaña* e *Ismael Soldevila,* abogados de la demandada.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

### EN RECONSIDERACION

A tenor con lo· preceptuado por la sección 6 de la Ley número 8 de 5 de abril de 1941 (págs. 303, 311) [1] la Junta de Salario Mínimo designó en 14 de junio de 1944 un Comité de Salario Mínimo para la industria del pan, galletas, repostería y pastas de harina, a fin de que éste investigara las condiciones de trabajo existentes en dicha industria e informara a la Junta sus conclusiones sobre los salarios mínimos, horas máximas de labor y condiciones de trabajo que en esa industria deben prevalecer. En 11 de octubre siguiente. el indicado Comité sometió a la Junta· de Salario Mínimo un informe conteniendo sus conclusiones y recomendaciones. En relación con el mismo la Junta celebró audiencias públicas en la ciudad de San Juan durante varios días de los meses de noviembre y diciembre de 1944, con el objeto de oír a los interesados y al público en general sobre

[1] Esta sección ha sido enmendada por las Leyes núm. 217 de 11 de mayo de 1945 (págs. 681, 689) y núm. 451 de 14 de mayo de 1947 (págs. 951, 957). Dichas enmiendas, sin embargo, no tienen pertinencia alguna a los fines de las cuestiones discutidas en esta opinión.

las recomendaciones formuladas por el mencionado Comité. A dichas audiencias compareció la aquí recurrente Sunland Biscuit Company, Inc., ofreció testimonio y formuló las objeciones y excepciones que figuran en la transcripción de evidencia que ha sido elevada à este Tribunal. Finalizadas las audiencias, la Junta de Salario Mínimo con fecha 30 de abril de 1945 emitió el Decreto Mandatorio núm. 9, que fué promulgado en 5 de mayo de 1945 y comenzó a regir 60 días después de dicha fecha.

En 19 de mayo de 1945 la Sunland Biscuit Company, Inc., radicó ante la Junta de Salario Mínimo una moción solicitando la reconsideración del Decreto Mandatorio núm. 9 y por resolución de 1 de agosto de dicho año, notificada a la recurrente 23 días más tarde, su moción fué declarada sin lugar. No conforme, acudió ante nos en 31 de agosto de 1945 en armonía con lo provisto por el inciso (d) de la sección 24 de la referida Ley núm. 8 de 1941, según dicha sección quedó enmendada por la Ley núm. 217 de 11 de mayo de 1945 (págs. 681, 699). Sostiene en su solicitud que al emitir y promulgar el Decreto Mandatorio núm. 9 y al dictar su resolución de 1 de agosto de 1945, la Junta de Salario Mínimo actuó sin autoridad y en exceso de sus poderes, toda vez que (a) violó lo dispuesto en la sección 12 de la Ley de Salario Mínimo, según ha sido enmendada, ya que al establecer dos zonas con salarios mínimos distintos para ellas, en una industria que por la naturaleza de la venta, distribución y consumo de sus productos no tiene diferenciación alguna jurisdiccional en sus mercados, concede una marcada ventaja de competencia a las fábricas establecidas en la zona segunda sobre la de la recurrente, que es la única de su clase en la zona primera; (b) porque el diferencial en jornal por hora establecido para las dos zonas resulta discriminatorio contra la compareciente, y en favor de las establecidas en la zona segunda, todas las cuales venden y distribuyen una parte sustancial de su producción dentro de

la primera zona, sin que por ello tengan que pagar los salarios fijados para ésta; (c) porque aun cuando en la sección H–1 del Decreto Mandatorio núm. 9 se establece que cualquier patrono dedicado a la elaboración de pan que tenga su tahona establecida en la zona segunda y venda su producción total o parcialmente en la zona primera vendrá obligado a pagar la compensación mínima a ésta correspondiente, dicho Decreto no contiene disposición análoga en cuanto a patronos dedicados a la elaboración de galletas; (d) porque la Junta actuó en exceso de sus poderes al fijar jornales diferentes a la industria de elaboración de galletas y al no disponer que los jornales correspondientes a la zona primera debían ser pagados por los de la zona segunda al vender el total o parte de su producción en aquélla, eliminando así la ventaja de competencia concedida a los industriales de la segunda zona que inundan con la venta de sus productos la jurisdicción territorial de la primera.

Para mayor comprensión de lo alegado por la recurrente y de las cuestiones por ella suscitadas creemos procedente copiar a continuación la parte pertinente del Decreto Mandatorio Núm. 9 relacionado con este recurso:

"B—*Salario Mínimo.*

"A todo empleado se le pagará un salario a razón de no menos del tipo por hora que se pasa a indicar, de acuerdo con el ramo de dicha industria y la zona o tipo de establecimiento (más adelante definidos en el apartado (C)) en que realice su labor:

"

"1. *Pan:*.

"2. *Galletas:*

| Ocupación | Zona 1a. | Zona 2a. |
|---|---|---|
| Trabajadores Diestros | $0.45 | $0.35 |
| Trabajadores Semidiestros | 0.35 | 0.25 |
| Trabajadores No Diestros | 0.25 | 0.20 |

"

"C—Zonas.

"Para los fines de este Decreto se establecen dos zonas en Puerto

Rico, que respectivamente abarcan: la primera, los municipios de San Juan y Río Piedras; y la segunda, el resto del territorio de Puerto Rico. . . . .''

En 7 de noviembre de 1945 dictamos resolución requiriendo a la Junta de Salario Mínimo para que dentro del término de diez días elevara a este Tribunal los autos originales del caso y señalamos para la vista del recurso el 17 de diciembre de 1945. Radicados por las partes los alegatos correspondientes la vista del recurso tuvo lugar en 27 de mayo de 1946. En 25 de junio de 1947 este Tribunal dictó sentencia anulando el Decreto Mandatorio núm. 9 en cuanto el mismo es aplicable a la industria de elaboración de galletas y devolviendo el caso a la Junta de Salario Mínimo para ulteriores procedimientos no inconsistentes con la opinión en que la misma se basó. Es conveniente hacer constar que esa opinión fué emitida por voz del Juez Presidente Sr. Travieso y que con ella concurrieron el Juez Asociado Sr. De Jesús y el infrascrito y que de ella disintieron los Jueces Asociados señores Todd, Jr., y Snyder, emitiendo el primero de éstos una opinión disidente con la cual estuvo conforme el segundo.

Solicitada por la querellada la retención temporal del mandato y concedida dicha retención por este Tribunal, en 19 de julio de 1947 la recurrida presentó una extensa solicitud de reconsideración de sentencia, a virtud de la cual diez días más tarde ordenamos a la Junta notificara su indicada moción a la recurrente y señalamos una nueva vista del recurso para el día 4 de noviembre de 1947, dejando en el ínterin en suspenso la sentencia dictada por nosotros en 25 de junio.

En el alegato radicado por la Junta de Salario Mínimo y en la vista celebrada en 4 de noviembre, ella ha sostenido fundamentalmente (I) que la Ley núm. 451 de 14 de mayo de 1947 (pág. 951), convalidó y ratificó el Decreto cuya validez se impugna en el presente recurso; (II) que la desi-

gualdad en tipo de salario mínimo al establecerse dos zonas para la industria de galletas no crea la "ventaja de competencia" prohibida por la sección 12 de la Ley núm. 217 de 1945, a pesar de que en el Decreto núm. 9 no existe disposición que obligue a los elaboradores de la segunda zona a pagar a sus empleados la compensación mínima correspondiente a la primera en el caso de que venda en esta última el total o parte de su producción; y (III) que al resolver la Junta expresamente que el Decreto núm. 9 no crea una ventaja de competencia, dentro de las condiciones económicas específicas en que opera la industria de galletas en Puerto Rico, ella llegó a una conclusión de hecho que es final de acuerdo con el inciso (b) de la sección 24 de la Ley de Salario Mínimo.

██ A nuestro juicio asiste la razón a la Junta, tanto en cuanto al tercer punto indicado como en relación con el primero.

La sección 24 (b) de la Ley núm. 8 de 1941 (págs. 303, 323)(²) provee en lo pertinente que:

"*Las conclusiones de hecho a que llegue la junta actuando dentro de sus poderes será, en ausencia de fraude, concluyente; Disponiéndose,* que cualquier persona perjudicada directa o indirectamente por cualquier decreto o regla de la junta, puede solicitar de ésta una reconsideración dentro de los veinte (20) días de haberse promulgado dicho decreto o regla. La solicitud de reconsideración debe hacerse bajo juramento y en ella se especificarán sus fundamentos; *Disponiéndose,* que sólo podrá concederse una reconsideración por una de las siguientes causas; *que la junta actuó sin autoridad o en exceso de sus poderes; o que el decreto, regla u orden se obtuvo mediante fraude.*

"Contra la resolución final que dictare la junta sobre el particular, podrá solicitarse revisión ante el Tribunal Supremo de Puerto

(²)La sección 24 ha sido enmendada por la Ley núm. 217 de 11 de mayo de 1945 (págs. 681, 699) y por la Ley núm. 451 de 14 de mayo de 1947 (págs. 951, 969). Dichas enmiendas en lo aquí pertinente son sustancialmente iguales a lo provisto por la Ley de 1941, y las mismas no estaban en vigor cuando en 1944 la Junta de Salario Mínimo dictó sus conclusiones de hecho en este caso.

Rico dentro del término de quince (15) días después de su notificación. *El tribunal podrá confirmar o desestimar la decisión de la junta; pero la desestimación sólo tendrá lugar por uno de los siguientes fundamentos:*

*"Que la junta actuó sin autoridad o en exceso de sus poderes; o que el decreto, regla u orden se obtuvo mediante fraude."* (Bastardillas nuestras.)

Según esa sección, "las conclusiones de hecho a que llegue la Junta, actuando dentro de sus poderes, serán concluyentes, en ausencia de fraude" y nuestro poder para anular sus decretos está limitado a casos en que la Junta ha actuado "sin facultad o en exceso de sus poderes, siempre que la cuestión se haya levantado de modo expreso en la audiencia celebrada ante la Junta, su Presidente o el receptor de prueba, o porque el decreto, reglamento, resolución u orden se obtuvieron mediante fraude." En el caso de autos, la conclusión a que llegó la Junta para justificar la fijación de salarios distintos para la zona primera y segunda en la industria de galletas está sostenida por la prueba que ella tuvo ante su consideración y no habiéndose alegado ni probado que el decreto se obtuvo mediante fraude, no podemos ni debemos intervenir con la misma.

Al resolver la moción de reconsideración presentada por la recurrente, la Junta hizo constar, en parte lo siguiente:

". . . No hay queja alguna, por parte de la peticionaria, en cuanto al cumplimiento del requisito de uniformidad en cada una de las dos zonas establecidas. Su contención se basa exclusivamente en que por el hecho de la diferencia en salarios se produce para sus competidores de la otra zona una situación favorable.

"Fácilmente se advierte la diferencia entre una zona y otra. La primera brinda al fabricante mejores oportunidades y facilidades mayores para el desenvolvimiento del negocio. Como cuestión de hecho, la realidad demuestra que en la segunda se ha venido pagando a los empleados compensación más baja que en la primera, no obstante lo cual los productores de ambas zonas han mantenido sus respectivos negocios y aun los han aumentado. La economía que los patronos de la zona segunda obtienen con la pequeña dife-

rencia de salarios que entre las dos zonas establece el decreto está más que compensada por otros factores. En esa región no es posible que los trabajadores perciban escalas iguales a los de la otra por ser menores las oportunidades de mercado, buen precio de venta, acceso a la materia prima, facilidades de transporte y otras.

"Al establecer la ligera diferencia en la compensación mínima para ambas zonas, la Junta no hizo otra cosa que seguir la distinción de antemano impuesta por las características, situación y circunstancias especiales del negocio en una y otra zona. . . ."

Las circunstancias, factores y hechos en que la Junta basó las distintas disposiciones del Decreto número 9 son, a nuestro juicio, suficientes para sostener dicho decreto en su totalidad.

Ya hemos indicado que en 25 de junio de 1947 este Tribunal dictó sentencia en este caso y que el 19 de julio siguiente se radicó por la recurrida la moción de reconsideración que nos ocupa. En el ínterin empezó a regir la Ley núm. 451 de 1947 (pág. 951). El artículo 2 de esta Ley enmendatoria textualmente copiado reza así:

"Artículo 2.—Por la presente se dispone que continuarán en. pleno vigor y efectividad todos los decretos, órdenes, reglas y reglamentos que hubieren sido promulgados por la Junta de Salario Mínimo con anterioridad a la aprobación de esta Ley *y quedan convalidados y ratificados todos los actos y actuaciones llevados a cabo por los funcionarios y empleados de dicha Junta, a tenor de las disposiciones de la Ley núm. 8 del 5 de abril de 1941, según ha sido subsiguientemente enmendada.*" (Bastardillas nuestras.)

Insiste la recurrida, según ya hemos visto, en que la aprobación de esta ley con anterioridad a la fecha en que recayó nuestra sentencia, convalidó y ratificó el Decreto núm. 9. También asiste la razón a la demandada a este respecto.

Dicho artículo de manera clara y terminante convalida y ratifica todas las actuaciones llevadas a cabo por la Junta de Salario Mínimo bajo la Ley de 1941, según ésta ha sido subsiguientemente enmendada. La Asamblea Legislativa de Puerto Rico, según hemos resuelto en distintos casos,

tiene facultad para aprobar estatutos reparativos de esta naturaleza. Véanse *Compañía Ron Carioca* v. *Tribunal de Contribuciones*, 67 D.P.R. 708, 712; *Pillich* v. *Fitzsimmons, Auditor*, 59 D.P.R. 105, 108; y casos en ellos citados. Y el hecho de que la Ley enmendatoria de 1947 por disposición expresa de su artículo 5, empezara a regir el 1 de julio de dicho año no altera la situación. Verdad es que nuestra sentencia se dictó en 25 de junio de 1947, pero la misma no había creado aún ningún derecho a favor de la recurrente. Además, el referido artículo de la Ley de 1947 específicamente hace referencia a decretos emitidos con anterioridad a la aprobación de la Ley núm. 451 y ésta lo fué en 14 de mayo de 1947, que es fecha anterior a aquélla en que se dictó la sentencia de este Tribunal. Bajo estas condiciones el estatuto curativo resultó completamente válido y constitucional. *Compañía Ron Carioca* v. *Tribunal de Contribuciones*, supra; *Swayne & Hoyt, Ltd.* v. *United States*, 300 U.S. 297, 301; *Hodges* v. *Snyder*, 261 U.S. 602; *Charlotte Harbor Ry.* v. *Welles*, 260 U.S. 8, 11; y *United States* v. *Heinszen & Co.*, 206 U.S. 370, 382.

Por otra parte, en relación con el artículo 2 de la Ley núm. 451 de 1947, alega la recurrente Sunland Biscuit Company, Inc. que el mismo resulta inconstitucional toda vez que el título de la misma "no incluye, ni da aviso alguno al legislador ni al público en general, de que en el mismo se van a convalidar actos ilegales cometidos por los funcionarios de la Junta de Salario Mínimo", citando al efecto el artículo 34 de nuestra Carta Orgánica.

El párrafo octavo del artículo 34 de nuestra Carta Orgánica dispone que "No se aprobará ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto, el cual deberá ser claramente expresado en su título; pero si algún asunto que no esté expresado en el título fuera incluído en cualquier ley, esa ley será nula solamente en aquella parte de ella que no haya sido expre-

sada en el título''. 48 U.S.C.A. sección 832, pág. 267. Así pues, de estar en pugna la Ley enmendatoria de 1947 con el referido párrafo de nuestra Carta Orgánica, esa Ley sería inválida tan sólo en cuanto al artículo 2. Empero, han sido muchas las veces que este Tribunal ha resuelto que a tenor con lo provisto por el párrafo anterior del Acta Jones el título de una ley no tiene que ser un índice de su contenido, sino que bastará con que el mismo sea un poste indicador de ésta. Y que en el cuerpo de ella no háya materia incongruente con su título o extraña a éste. *Laboy* v. *Corp. Azucarera Saurí & Subirá,* 65 D.P.R. 422, 425; *Gobierno de la Capital* v. *Consejo Ejecutivo,* 63 D.P.R. 434, 462; *Rivera* v. *Corte,* 62 D.P.R. 513, 539; *Rodríguez* v. *Corte,* 60 D.P.R. 919, 921; *Roig* v. *Gallardo, Tesorero,* 39 D.P.R. 808, 809 y *Trigo* v. *Banco Terr. y Agrícola,* 36 D.P.R. 275, 301.

El título de la Ley núm. 451 de 1947, lee así:

''Ley para enmendar las secciones 4, 5, 6, 7, 8, 9, 10, 10 A, 11, 15, 17, 19, 23, 24, 25 y 26 de la Ley núm. 8, aprobada el 5 de abril de 1941, titulada 'Ley creando una Junta de Salario Mínimo en el Departamento del Trabajo; estableciendo el procedimiento para determinar el salario mínimo que debe pagarse en las distintas ocupaciones, las horas máximas de labor y las condiciones de trabajo requeridas para la conservación de la salud, la seguridad y el bienestar de los trabajadores; dándole carácter mandatorio a los decretos sobre salario mínimo, horas de labor y condiciones de trabajo que dicha Junta promulgare en cumplimiento de sus deberes; estableciendo el procedimiento de apelación de las disposiciones de la Junta; fijando penalidades por la violación de las disposiciones de esta Ley,' y para otros fines,' según ha sido posteriormente enmendada por las Leyes núm. 1, de 12 de noviembre de 1941, núm. 9, de 20 de marzo de 1942, núm. 44, de 23 de abril de 1942 y núm. 217, de 11 de mayo de 1945; para conferir al Comisionado del Trabajo las facultades y poderes necesarios para hacer cumplir los decretos, reglas y reglamentos dictados o que dicte la Junta de Salario Mínimo; y para otros fines.''

Ese título nada dice respecto a la convalidación y ratificación provistas por el artículo 2 de la Ley. Contiene a nuestro juicio un solo asunto que sirve de ''poste indi-

cador de su contenido'', y lo provisto por el artículo 2 de la Ley no es en manera alguna incongruente o extraño al asunto contenido en su título. Además, conforme indicamos en *Rivera* v. *Corte,* supra, a la pág. 540, ''Sólo en un caso claro y terminante estaríamos justificados ·en anular una ley por deficiencias en su título en violación del artículo 34, supra.''

Bajo estas circunstancias, es imperativo concluir que a virtud del referido artículo número 2 la Asamblea Legislativa de Puerto Rico convalidó y ratificó de manera expresa las actuaciones de la Junta de Salario Mínimo al emitir ésta el Decreto Mandatorio núm. 9, objeto de este recurso.

Siendo nuestra opinión que las conclusiones de hecho a que llegó la Junta deben considerarse como finales por nosotros y que las actuaciones de dicha Junta han quedado convalidadas y ratificadas por nuestra Asamblea Legislativa, parécenos innecesario que discutamos el segundo punto suscitado por la Junta en su moción de reconsideración, al efecto de que al dictar su referido Decreto no creó ventaja de competencia alguna en favor de los fabricantes de galletas cuyos establecimientos radican en la segunda zona.

Antes de terminar creemòs conveniente exponer a grandes rasgos a qué se ha debido la prolongada demora en la resolución de este recurso. Según ya hemos indicado, la querella se radicó ante nos en 31 de agosto de 1945, fecha durante la cual nos hallábamos en receso. En 7 de noviembre de 1945, a raíz de reanudarse las sesiones de este Tribunal se dictó resolución requiriendo a la Junta elevara los autos del caso y señalando la vista del recurso para el 17 de diciembre siguiente. En 27 de noviembre de 1945 las partes radicaron una estipulación solicitando la posposición de la vista y así lo acordamos, transfiriendo la misma para el 28 de enero de 1946, a las 2 de la tarde. En enero 8 de dicho año las partes presentaron una nueva estipulación, alegando que el abogado de la recurrida se hallaba fuera de

Puerto Rico. En consideración a ello se señaló el día 27 de mayo de 1946 a las 2 p.m. para la vista del caso. En dicho día se oyó a las partes y quedó sometido el recurso a nuestra consideración. Un par de meses después vino por ministerio de ley el receso de verano. Al reanudar sus sesiones, el Tribunal quedó constituído tan sólo por cuatro jueces, ya que el quinto había presentado su renuncia en 31 de agosto de 1946. Tras un estudio del recurso la opinión de los cuatro jueces del Tribunal estuvo dividida y se creyó oportuno aguardar hasta que el quinto juez fuese nombrado. Al ser éste designado, su toma de posesión tuvo lugar en 8 de abril de 1947. Se señaló entonces una nueva vista del recurso para el 2 de junio de 1947, resolviéndose el mismo, en la forma que ya hemos indicado, en 25 de junio de 1947. Presentada la moción de reconsideración objeto de esta opinión la misma fué vista en 4 de noviembre siguiente.

*Por las razones expuestas, se dictará sentencia dejando sin efecto la dictada por este Tribunal en 25 de ·junio de 1947, se declara válido y subsistente el Decreto Mandatorio núm. 9 dictado por la Junta de Salario Mínimo en 30 de abril de 1945, y se condena a la recurrente al pago de la suma de $100 por concepto de honorarios de abogado de la recurrida.*([3])

Opinión disidente del Juez Presidente Sr. Travieso en la cual concurre el Juez Asociado Sr. De Jesús.

En junio 25 de 1947, este Tribunal, por el voto de una mayoría de sus miembros, dictó sentencia en el caso del

([3])La sección 24 de la Ley núm. 8 de 1941, según fué enmendada por la Ley 217 de 1945 (págs. 681, 699), provee en su inciso (f):

"El recurso de revisión producirá la suspensión del decreto, reglamento, resolución u orden impugnada únicamente en cuanto a la parte o partes recurrentes y siempre que lo disponga 'el tribunal, previa prestación de fianza para garantizar el pago total de salarios envueltos en cada recurso o de los daños que se causen, cuando no se trate de salarios, más una cantidad razonable, nunca menor de trescientos (300). dólares, que se impondrá a cada parte promovente contra la cual se dicte sentencia, a menos que se le haya permitido litigar *in forma pauperis,* en concepto de honorarios de abogado."

epígrafe anulando el Decreto número 9 de la Junta de Salario Mínimo en cuanto el mismo sea aplicable a la industria de galletas. En la opinión que sirvió de base a dicha sentencia, expusimos como principal fundamento para la anulación del mencionado decreto que por virtud del mismo la Junta de Salario Mínimo, en contravención del claro y expreso mandato del párrafo 2 de la sección 12 de la Ley núm. 8 de 1941 ((1) pág. 303), según fué enmendada por las Leyes núm. 9 de 1942 ((1) pág. 301) y núm. 217 de 1945,(1) le ha impuesto a la corporación recurrente un salario mínimo más alto que el fijado a sus competidores, dándole a éstos una marcada e innecesaria ventaja de competencia, al no delimitar el área territorial donde podrán venderse sus productos sin pagar el salario mínimo más alto, para que la diferencia en salarios pagados no opere como un discrimen en contra de la recurrente. En cuanto a la alegación hecha por la Junta de que el Decreto núm. 9 había sido ratificado por la Legislatura, por virtud de lo dispuesto en el artículo 2 de la Ley núm. 217 de mayo 11 de 1945, pág. 681,(2)

(1)"Sección 12. .

"La Junta podrá clasificar los trabajos en cualquier industria, negocio u ocupación, de acuerdo con la naturaleza de los servicios a prestar, así como prescribir escalas de salarios mínimos apropiadas para distintas clases de trabajo, con el objeto de fijar para cada clasificación el tipo más alto de salario mínimo compatible con los propósitos de esta Ley. La Junta podrá señalar también salarios mínimos diferentes para distintas zonas o regiones, o para distintas categorías o clases de la misma industria, negocio u ocupación, cuando a su juicio tal diferenciación sea aconsejable debido a las condiciones existentes entre las zonas, regiones o categorías, siempre que tal acción no conceda ventaja de competencia a otra u otras zonas, regiones o categorías; pero al disponerse el salario mínimo para una industria, negocio u ocupación, el tipo fijado será uniforme para toda industria, negocio u ocupación de la misma clase, categoría o importancia en la zona o región de que se trate."

(2)". . . Disponiéndose, que no obstante la derogación decretada en el artículo anterior, la Junta de Salario Mínimo nombrada y en funciones bajo la Ley que por la presente se enmienda seguirá desempeñando sus facultades y deberes hasta que el Gobernador de Puerto Rico haya nombrado los tres miembros de la Junta dispuesta por esta Ley, que será la continuadora y sucesora de la actual para todos los fines, sin interrupción alguna de tiempo entre la existencia de una y otra. Todos los asuntos que al empezar a regir esta Ley se hallen pendientes de tramitación o resolución por la actual Junta

resolvimos que el propósito fundamental de dicha Ley núm. 217 fué el de reorganizar la Junta de Salario Mínimo, constituída hasta entonces por nueve personas, para sustituirla por una nueva Junta integrada por tres personas nombradas por el Gobernador; y que fué con el sólo propósito de evitar la interrupción del funcionamiento de la Junta, durante el período comprendido entre la aprobación de la nueva ley y el nombramiento de la nueva Junta, que se dispuso en el citado estatuto que todos los decretos mandatorios, reglamentos, resoluciones y órdenes dictadas por la antigua junta "continuarán en vigor" mientras no sean revocados, suspendidos o enmendados por la nueva junta. Resolvimos, además, que la citada disposición de que los decretos mandatorios continuarían en vigor, mientras no fuesen revocados o enmendados por la nueva junta, no equivalía a una ratificación legislativa del Decreto núm. 9 hasta el punto de subsanar sus defectos y convertir en válidas e inexpugnables aquellas contravenciones de la ley en que hubiere podido incurrir la junta que promulgó dicho decreto. Como una razón adicional en contra de la alegada convalidación del decreto en controversia, hicimos constar que no era po-

pasarán a la nueva, inmediatamente que ésta quede nombrada, para conocer de ellos, tramitarlos y resolverlos hasta su etapa final de acuerdo con lo dispuesto por la vigente Ley según queda ahora enmendada. En caso de que se hubiere nombrado por la actual Junta algún Comité de Salario Mínimo para cualquier industria, negocio u ocupación y dicho Comité no hubiera sometido a la mencionada Junta el correspondiente informe y recomendaciones, someterá éstos a la nueva Junta, para hacer lo cual seguirá constituído, hasta que cumpla su encomienda, en la misma forma que lo estuviera al empezar a regir la presente Ley, pudiendo, sin embargo, la nueva Junta llenar cualquier vacante que ocurra en el seno de ese Comité. Si la actual Junta estuviere pendiente de designar algún Comité de Salario Mínimo para cualquier industria, negocio u ocupación y a ese fin hubiera solicitado candidatos de los patronos y los trabajadores, la nueva Junta tendrá facultad para hacer el nombramiento de tal Comité en la forma que dispone la sección 6 enmendada por la presente Ley, eligiendo los miembros patronales y los de los trabajadores de entre las respectivas listas de candidatos que se hayan sometido o deban someterse a la consideración de la Junta. Continuarán en vigor, mientras no se revoquen, suspendan, enmienden o alteren por la nueva Junta, todos los decretos mandatorios, reglamentos, resoluciones, acuerdos y órdenes dictados o aprobados por la actual Junta.''

sible sostener que la Legislatura tuviera la intención de convalidar un decreto dictado en contravención del párrafo 2 de la sección 12 de la Ley núm. 8 de 1941, enmendado por la Ley núm. 9 de 1942, supra, cuando en la misma Ley núm. 217 de 1945 el legislador volvió a disponer categóricamente que la junta podrá señalar salarios mínimos para distintas zonas "siempre que tal acción' no conceda ventaja de competencia a otra u otras zonas, regiones o categorías."

En julio 29 de 1947, a petición de la Junta recurrida, dejamos sin efecto la sentencia de 25 de junio del mismo año y ordenamos una nueva vista la cual fué celebrada el 4 de noviembre de 1947.

El único argumento adicional aducido en apoyo de la moción sobre reconsideración de la sentencia de 25 de junio de 1947 es el de que el Decreto núm. 9 fué convalidado y ratificado "en términos categóricos y claros" por el artículo 2 de la Ley núm. 451 de 14 de mayo de 1947, páginas 951, 971, que dice así:

"*Artículo 2.* Por la presente se dispone que *continuarán en pleno vigor y efectividad todos los decretos,* órdenes, reglas y reglamentos que hubieren sido promulgados por la Junta de Salario Mínimo con anterioridad a la aprobación de esta Ley y *quedan convalidados y ratificados todos los actos y actuaciones* llevados a cabo por los funcionarios y empleados de dicha Junta, a tenor de las disposiciones de la Ley núm. 8 del 5 de abril de 1941, según ha sido subsiguientemente enmendada. (Bastardillas nuestras.)

Una mayoría del Tribunal opina ahora que la sentencia que dictamos en junio 25 de 1945 debe ser anulada y que en su lugar debe dictarse otra declarando válido y subsistente el Decreto mandatorio núm. 9 y condenando a la compañía recurrente al pago de honorarios de abogado.

Disentimos de la opinión del Tribunal por las razones que pasamos a exponer.

1. El artículo 2 de la Ley núm. 451 de 1947, supra, la cual comenzó a regir con posterioridad a junio 25 de 1947,

fecha de nuestra sentencia, no tiene el alcance ni el efecto que se le atribuye en la opinión de la mayoría. No estamos conformes, por considerarla errónea, con la conclusión de que "dicho artículo de manera clara y terminante convalida y ratifica todas las actuaciones llevadas a cabo por la Junta de Salario Mínimo bajo la Ley de 1941, según ésta ha sido subsiguientemente enmendada." El claro lenguaje del estatuto no se presta a tal interpretación. El citado artículo 2 no dispone que los decretos y órdenes promulgados por la Junta queden convalidados y ratificados. Lo que sí dispone en términos claros y precisos es que todos los decretos, órdenes, reglas y reglamentos promulgados por la Junta con anterioridad a la aprobación de la Ley "continuarán en pleno vigor y efectividad." Cuando se dice que un estatuto continuará en pleno vigor y efectividad, ello equivale a decir que sus disposiciones tendrán fuerza de ley hasta que las mismas sean derogadas por legislación posterior o anuladas por decreto judicial. Si el legislador hubiese tenido la intención de convalidar y ratificar los decretos mandatorios de la Junta de Salario Mínimo, muy fácil le hubiera sido decirlo con las mismas claras y terminantes palabras que usó para disponer que "quedan convalidados y ratificados todos los actos y actuaciones llevados a cabo por los empleados y funcionarios de dicha Junta." El legislador, dándose perfecta cuenta del alcance de sus palabras, cuando quiso prorrogar la vigencia y efectividad de los decretos mandatorios, usó el lenguaje apropiado para ese fin y se limitó a decir que los decretos "continuarán en pleno vigor y efectividad". Cuando quiso subsanar las faltas cometidas o los actos *ultra vires* que los funcionarios o empleados administrativos de la Junta hubieren realizado, en términos claros y precisos dispuso que esos actos y actuaciones "quedan convalidados y ratificados."

Opinamos que del lenguaje usado por el legislador no puede inferirse que su intención fuera la de subsanar, con-

validar o ratificar las infracciones de ley cometidas por la Junta de Salario Mínimo en los distintos decretos mandatorios por ella promulgados. Más aún, suponiendo que la legislatura tuviera la intención de convalidar y ratificar el Decreto mandatorio número 9, en cuanto el mismo pueda ser aplicable a la industria de fabricación de galletas, cabe preguntar: ¿Está facultada la legislatura para convalidar y ratificar una disposición de un decreto mandatorio que, en contravención de la ley, al fijar salarios mínimos para dos zonas distintas concede ventaja de competencia a una de las dos zonas en contra de la otra, privando así a las personas establecidas dentro de la zona perjudicada de la igual protección de las leyes? Es obvio que la pregunta debe ser contestada negativamente.

Es cierto, como se dice en la opinión de la corte, que la Asamblea Legislativa tiene facultad para aprobar estatutos reparativos. Pero los mismos casos en dicha opinión citados demuestran que ésa no es una facultad absoluta y que por el contrario está sujeta a ciertas limitaciones. En *Pillich* v. *Fitzsimmons, Auditor,* 59 D.P.R. 105, 108, al sostener la validez de la Ley para convalidar y ratificar actuaciones del Presidente del Senado y del *Speaker* de la Cámara de Representantes, al designar so color de autoridad a los empleados temporeros de ambas cámaras, dijimos:

"Por el contrario, la regla prevaleciente tanto en los Estados como en el Gobierno Federal es al efecto de que el poder legislativo puede aprobar cualquier ley reparadora (*remedial statute*) convalidando una ley o actuación, siempre que dicha legislatura originalmente hubiese podido aprobar la legislación convalidada y siempre que la ley reparadora no menoscabe obligaciones contractuales ni derechos adquiridos (*vested rights*) al amparo de una legislación anterior. (Citas.)

En *Compañía Ron Carioca* v. *Tribunal de Contribuciones,* 67 D.P.R. 708, 713, sostuvimos la validez de la Ley núm 5 de 24 de julio de 1946, como estatuto reparativo (*curative act*) de la Ley núm. 438 de 24 de abril de 1946 (pág. 1253).

La alegada inconstitucionalidad de la Ley núm. 438 consistía en que el proyecto de la misma no fué aprobado con igual texto en cada uno de los organismos colegisladores, en contravención a las disposiciones expresas de la Carta Orgánica. En la opinión, emitida por voz del Juez Asociado Sr. Marrero, dijimos:

"Es de general conocimiento que a menos que la constitución del Estado o la carta orgánica del Territorio lo prohiban específicamente, el poder legislativo tiene plenas facultades para convalidar, mediante estatutos reparativos (*curative acts*) ciertos defectos en que se haya incurrido en leyes contributivas anteriores. *United States* v. *Heinszen & Co.*, 206 U.S. 370, 51 L. Ed. 1098, 27 S. Ct. 742, 11 Ann. Cas. 688. También, que el mero hecho de que la contribución se cobre bajo un estatuto inconstitucional o inválido no impide que el poder legislativo convalide los procedimientos seguidos a tenor del mismo mediante la aprobación de un estatuto posterior que no contenga los defectos o errores que invalidaron la ley original. *United States* v. *Heinszen & Co.*, supra; *Rafferty* v. *Smith, Bell & Co.*, 257 U.S. 226, 66 L. Ed. 208, 42 S. Ct. 71; *Charlotte Harbor Ry.* v. *Welles*, 260 U.S. 8, 67 L. Ed. 100, 43 S. Ct. 3; *Hodges* v. *Snyder*, 261 U.S. 600, 67 L. Ed. 819, 43 S. Ct. 435; 140 A.L.R. 990 *et seq.* y *Whitlock* v. *Hawkins*, 105 Va. 242, 53 S.E. 401.

"Las leyes reparativas generalmente tienen efecto retroactivo y cuando a virtud de las mismas el legislador impone una contribución o realiza un acto que originalmente pudo imponer o realizar, ellas son declaradas constitucionales, no obstante el hecho de que las leyes anteriores que tratan de corregir hubieran podido ser contrarias a la Constitución. 70 A.L.R. 1436; 11 Am. Jur. 1208, 1212; 51 Am. Jur. 163, 164 y 679 y casos citados en el párrafo anterior."

Conviene aclarar que en el caso de la *Compañía Ron Carioca* la alegada inconstitucionalidad consistía en un mero error en los procedimientos seguidos para aprobar la ley, error de carácter subsanable, y no en una carencia de facultad para aprobar la ley misma, lo cual no hubiera podido ser subsanado por legislación posterior.

En *Puerto Rico Tobacco Corporation* v. *Buscaglia*, 62 D.P.R. 811, la cuestión envuelta era si la legislatura actuó dentro de sus facultades al aprobar la Ley núm. 22 de 1942,

con el propósito de convalidar y ratificar el cobro de contribuciones bajo la Ley núm. 22 de 18 de junio de 1939. Resolvimos: (1) que la Ley 22 de 1939 era inconstitucional y nula por discriminatoria, negar la igual protección de las leyes y violar la cláusula de la Carta Orgánica sobre uniformidad en la imposición de contribuciones; y (2) "que si la Legislatura no estaba legalmente facultada para aprobar la Ley núm. 22 de junio 18 de 1939, por ser dicha ley contraria a las disposiciones y prohibiciones constitucionales, tampoco lo estaba para ratificar dicha ley y los actos bajo ella realizados."

La regla establecida por los casos ya citados y por la Corte Suprema Federal[3] es que lo que la legislatura pudo haber autorizado lo puede ratificar, si puede autorizarlo en la fecha de la ratificación. Esa facultad es necesaria para que los propósitos del Gobierno no puedan ser frustrados por omisiones o inexactitudes en el ejercicio de funciones necesarias para su administración. Aplicando la citada regla al presente caso tenemos que llegar a la conclusión de que si la legislatura no está legalmente facultada para establecer salarios mínimos para distintas zonas, en forma tal que se conceda ventaja de competencia a una zona sobre otra, pues ello equivaldría a negar a la zona perjudicada la protección igual de las leyes, tampoco está facultada para hacerlo mediante la alegada convalidación y ratificación de un decreto que adolece de ese defecto constitucional. Opinamos por lo tanto que el Decreto mandatorio núm. 9, en cuanto afecta a la industria de fabricación de galletas, es nulo.

2. En la opinión de la Corte se acepta como un hecho indiscutible que al establecer la diferencia en la compensación mínima para ambas zonas, "la Junta no hizo otra cosa que

---

[3] *United States* v. *Heinszen & Co.*, 206 U. S. 370, 51 L. Ed. 1098; *Rafferty* v. *Smith, Bell & Co.*, 257 U.S. 226, 66 L. Ed. 208; *Charlotte Harbor & N. Ry. Co.* v. *Welles*, 260 U.S. 8, 67 L. Ed. 100.

seguir la distinción de antemano impuesta por las características, situación y circunstancias especiales del negocio en una y otra zona.'' Aceptamos la veracidad del hecho, mas no sus efectos. Si bien es cierto que con anterioridad a la aprobación del Decreto núm. 9, en la zona primera se pagaban salarios más altos que en la zona segunda, también es cierto que mientras no existiese una ley, decreto o reglamento fijando los salarios mínimos que deberían pagarse en cada zona, los fabricantes situados dentro de la zona primera tenían libertad para defenderse de la competencia de los situados en la zona segunda, reduciendo los salarios para equipararlos a los que se pagaban en la mencionada zona segunda. Tan pronto como el Decreto núm. 9 entró en vigor, los fabricantes de la zona primera fueron despojados de esa libertad de acción y quedaron a merced de los fabricantes de la zona segunda, sin medio alguno para defenderse de la ventaja de competencia que a los mismos concede el decreto impugnado. Los fabricantes de galletas en Bayamón, Cataño y Río Piedras, puntos situados dentro de la zona segunda, aun cuando gozan de las mismas características, facilidades, situación y circunstancias especiales del negocio que los fabricantes de la zona primera, tienen sobre estos últimos la ventaja de competencia que les concede el Decreto núm. 9. Por eso sostenemos que dicho decreto es discriminatorio y constitucionalmente nulo por negar a la corporación recurrente la igual protección de las leyes. Esta objeción fundamental pudo ser fácilmente obviada si, como se hizo en el caso de los fabricantes de pan, se hubiese dispuesto en el decreto que cualquier fabricante de galletas localizado en la zona segunda que venda sus productos en la zona primera, vendrá obligado a pagar a sus empleados la compensación mínima correspondiente a la zona primera.

*Por las razones expuestas opinamos que la sentencia que dictamos el 25 de junio de 1947 es correcta y debe ser sostenida.*