EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN PÉREZ MÉNDEZ, acusado y apelante.

*Número:* 16787. *Resuelto:* 21 de julio de 1961.

*Francisco Coll Moya,* abogado del apelante; *J. B. Fernández Badillo, Procurador General* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo, apelado.

Sala integrada por el Juez Asociado señor Blanco Lugo, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Juan Pérez Méndez fue convicto de tres infracciones a la sección 4 de la Ley Núm. 220 de 15 de mayo de 1948 (Leyes, pág. 739, 33 L.P.R.A. sec. 1250) consistentes en que en tres distintas ocasiones "tenía en su poder un pedazo de papel conteniendo números de tres cifras, seguidas de guión y otros números a la derecha, y apuntó al agente . . . números para el juego ilegal de la bolita". Se le impuso una sentencia de ocho meses de cárcel en cada caso, para ser cumplidos concurrentemente. Apeló.

En el recurso interpuesto señala la comisión de cuatro errores, que consideramos a continuación.

1. *Constitucionalidad de la Ley de la Bolita.*—Sostiene el apelante que la ley bajo la cual fue enjuiciado y convicto es inconstitucional porque a) tratándose de un estatuto penal la definición del delito es tan vaga e indefinida que viola la cláusula del debido procedimiento de ley; y b) porque en el título de la ley no se hace referencia expresa a las disposiciones de la sección 6 de la misma (33 L.P.R.A. sec. 1252)

ni la aludida disposición, relativa a la designación del tribunal que entenderá en las infracciones de la ley, es germana con el asunto que se indica en el título.

En cuanto al primer fundamento de impugnación por mor de vaguedad e imprecisión en la definición del delito, baste decir que lo hemos rechazado en ocasiones anteriores, *Pueblo* v. *Mantilla*, 71 D.P.R. 36 (1950) ; *Pueblo* v. *Santos*, 71 D.P.R. 310 (1950) ; *Pueblo* v. *Tonje*, 71 D.P.R. 317 (1950), y que nada nuevo alega el apelante en abono a su ataque a la constitucionalidad de la ley por este motivo. Véanse, Collings, *Unconstitutional Uncertainty-An Appraisal*, 40 Cornell L. Q. 195 (1955) ; *The Void for Vagueness Doctrine in the Supreme Court*, 109 U. of Pa.L.Rev. 67 (1960).

En cuanto al segundo fundamento, es cierto que el Artículo 34 de la Carta Orgánica de 1917 (1 L.P.R.A. pág. 100), vigente a la fecha de la aprobación de la ley,[1] requiere que en el título de los proyectos de ley se exprese claramente el asunto de que trata el mismo, y decreta la nulidad de aquella parte de una ley a la cual no se haya hecho referencia en el título. Sin embargo, el propósito de esta disposición es "impedir la inclusión en la ley de materia incongruente y extraña, y a la vez poner en guardia contra la inadvertencia, la ocultación y el fraude en la legislación". *Rivera* v. *Corte*, 62 D.P.R. 513, 539 (1943). No se requiere que el título constituya un índice detallado del contenido de la ley, sino meramente que sea un hito indicador del asunto cubierto por la misma. *Sunland Biscuit Co.* v. *Junta de Salario Mínimo*, 68 D.P.R. 371 (1948) ; *Rodríguez* v. *Corte*, 60 D.P.R. 919 (1942).

---

[1] La Constitución del Estado Libre Asociado de Puerto Rico reprodujo igual disposición redactada en idénticos términos: "No se aprobará ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto, el cual deberá ser claramente expresado en su título, y toda aquella parte de una ley cuyo asunto no haya sido expresado en el título será nula." (Art. III, Sec. 17, 1 L.P.R.A., pág. 200.)

Como ajustadamente se indica en el alegato presentado por el delegado del Procurador General, "[l] a manera o forma de *enjuiciar* a los infractores de la ley, que es de lo que en efecto trata la disposición impugnada por el apelante, es más bien una cuestión incidental a la adecuada administración de la propia ley, y no tiene que estar necesariamente incluida en el título. Lo importante es que las disposiciones de la ley y el asunto que se expresa en el título estén íntimamente relacionados. En otras palabras, le hubiese bastado al legislador declarar estorbos públicos a los juegos conocidos generalmente como 'Bolita', 'Bolipool' y otras combinaciones clandestinas relacionadas, y dejar para el cuerpo de la ley todas aquellas medidas necesarias e incidentales a ese fin." Cf. *Pueblo* v. *Del Valle*, 60 D.P.R. 184 (1942); *M. Taboada & Co.* v. *Rivera Martínez, Comisionado*, 51 D.P.R. 253 (1937).

El título de la Ley de la Bolita([2]) es suficientemente explícito para advertir, no sólo a los legisladores, sino al público en general de que se intenta declarar estorbo público los juegos a que en el mismo se hace referencia, y que se crean varios delitos en relación con éstos. Consecuencia de ello es la forma de procesar a los infractores, que no puede decirse que sea incongruente con el asunto general de la ley. *Laboy* v. *Corporación Azucarera Saurí & Subirá*, 65 D.P.R. 422

---

([2]) Dicho título lee como sigue:

"Para declarar estorbo público (public nuisance), los juegos conocidos generalmente como 'Bolita', 'Bolipool', combinaciones clandestinas relacionadas con los 'pools' o bancas de los hipódromos de Puerto Rico y loterías clandestinas; ordenar a la policía que ocupe todo mimeógrafo, artefacto, material o implemento que se estén utilizando o se puedan utilizar para manipular o poner en circulación este negocio en la Isla; para castigar a los infractores de esta ley; para prohibir la posesión de cualquier papeleta, billete, ticket, libreta, lista de números, o letras, boletos o implementos que pudieren usarse para los fines del juego de la 'Bolita', 'Bolipool', combinaciones clandestinas relacionadas con los 'pools' o bancas de los hipódromos de Puerto Rico y loterías clandestinas; para proveer en cuanto a la admisión de fianzas en apelación luego de sentencias por infracciones a esta ley; para crear adscrita a la Oficina del Gobernador de Puerto Rico una fuerza especial de investigación en adición al cuerpo de la Policía Insular de Puerto Rico, fijar sus deberes, asignar la suma de doscientos

(1945); Nota, Chi-Kent L. Rev. 387 (1952); Comentario, 24 U. of Chi. L. Rev. 722–728 (1957). Además, estas disposiciones constitucionales se interpretan en forma liberal para reducir la intervención judicial en el procedimiento legislativo. Rudd, *"No Law Shall Embrace More Than One Subject"*, 42 Minn. L. Rev. 389, 393 (1958).

Se arguye que como la ley anterior sobre la materia—Ley Núm. 25 de 17 de julio de 1935 (Leyes, pág. 153)—disponía que los casos por infracción a la misma se radicarían en las cortes municipales, y si se iniciaban en las entonces cortes de distrito el acusado tenía derecho a juicio por jurado conforme al artículo 178 del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 462), y la ley actual confiere jurisdicción exclusiva a las cortes superiores y únicamente por tribunal de derecho, ello conlleva un cambio en la norma procesal que es preciso hacer constar explícitamente en el título. Presumiendo que este razonamiento hiciere inaplicable lo expuesto anteriormente al efecto de que se trata de una disposición sobre administración de la ley que es germana con el título de la misma, el requisito estaría suficientemente cumplido pues la ley actual contiene una cláusula específica de derogación de la anterior, y a ello se hace referencia expresa en el título.

■ 2. *Corroboración del Agente Encubierto.*—El apelante señala que la declaración del agente encubierto necesita ser corroborada por tratarse de un cómplice. En *Pueblo* v. *Seda,*

---

cincuenta mil dólares ($250,000) para atender a todos los gastos de dicha fuerza para el año económico de 1948–49, disponer la forma en que anualmente se asignarán los fondos para su funcionamiento; para asignar los fondos necesarios para el pago de los sueldos de los miembros de la fuerza especial que por esta ley se crea desde la fecha en que entre en vigor esta ley hasta el 30 de junio de 1948 y para la adquisición del material de oficina así como cualquier otro que fuere necesario para poner en ejecución las disposiciones de esta ley; para castigar a toda persona que se prestare a ayudar o influir para que se exima a cualquier persona de ser perseguida, arrestada o convicta por cualquier infracción de las disposiciones de esta ley; para derogar la Ley Número 25 aprobada en 17 de julio de 1935, y para otros fines."

82 D.P.R. 719 (1961) consideramos idéntico apuntamiento, y lo rechazamos. Sin embargo, deseamos aclarar que lo que en dicha opinión indicamos sobre la ausencia de intención criminal del agente encubierto se dirigía a contestar un planteamiento sobre el particular hecho por el acusado-apelante. De no haber sido esa la situación la expresión indicada hubiese sido innecesaria si consideramos la naturaleza del delito castigado por la Ley 220.

 3. *Castigo Cruel e Inusitado.*—En la discusión de este error se señala que como la Asamblea Legislativa ha legalizado determinados juegos de azar, la pena fijada en el estatuto para el infractor de la Ley de la Bolita resulta, en su imposición, un castigo cruel e inusitado. En verdad, no vemos la lógica a este planteamiento. No obstante, hemos considerado la cuestión con miras a determinar si efectivamente se viola la cláusula constitucional que se refiere a la imposición de castigos crueles e inusitados.

Históricamente esta prohibición se refería a castigos bárbaros e inhumanos, como el incineramiento en la hoguera, la decapitación, el desmembramiento del cuerpo humano y otras formas de tortura, y se dirigía más bien a la forma del castigo que al término de su duración. *Wilkerson* v. *Utah*, 99 U. S. 130 (1878); *Black* v. *United States*, 269 F.2d 38 (CA 9, 1959); *Hemans* v. *United States*, 163 F.2d 228 (CCA 6, 1947). Con el desarrollo de la civilización, y el abandono de estas prácticas inhumanas, el precepto ha adquirido una nueva significación y se dirige contra aquellos "castigos tan desproporcionados con la ofensa cometida que ofenden el sentido moral de la comunidad". *Hobbs* v. *Warden, Maryland Penitentiary*, 163 A.2d 221 (Md. 1960); *People* v. *Elliot*, 112 N. E. 300 (Ill. 1916); *Weems* v. *United States*, 217 U. S. 349 (1910); Anotaciones, 116 A.L.R. 212 (1938); 55 L.R.A. 1915C, pág. 558 y 35 L.R.A. pág. 561 (1897). En otras palabras, el castigo determinado por el poder legislativo debe estar en proporción con el problema social que tiende a evitar.

Véase, *Espinosa* v. *Ramírez*, 72 D.P.R. 901 (1951), en el cual aplicamos este mismo criterio en relación con una sentencia indefinida por incumplimiento de una orden sobre fijación de pensión alimenticia. En este sentido, los tribunales no pueden alterar una sentencia que está dentro de los límites fijados por el estatuto, *Akers* v. *United States*, 280 F.2d 198 (CA 6, 1960); *Gallego* v. *United States*, 276 F.2d 914 (CA 9, 1960); y su misión se limita a determinar si el estatuto en sí fija un castigo excesivo. *Pependrea* v. *United States*, 275 F.2d 325 (CA 9, 1960); *Smith* v. *United States*, 273 F.2d 462 (CA 10, 1959).

La imposición de multa y reclusión en prisión no es *per se* un castigo cruel e inusitado. *People ex rel Bradley* v. *Illinois State Reformatory*, 36 N.E. 76 (Ill. 1894); *Hobbs* v. *State*, 32 N. E. 1019 (Ind. 1893); *State* v. *Foster*, 46 Atl. 833 (R. I. 1900). En *State* v. *Staub*, 162 So. 766 (La. 1935) se sostuvo que una multa no menor de $200 ni mayor de $3,000, o encarcelamiento mínimo de un año y máximo de tres años, por la violación de un estatuto que castiga las loterías clandestinas, no constituye un castigo cruel e inusitado. A igual conclusión se llegó en *Schrouffe* v. *Commonwealth*, 133 S.W. 205 (Ky. 1911) respecto a la pena impuesta por idéntico delito y que prescribía una multa de $500 a $1,000 y encarcelamiento de dos a cinco años.

No habiéndose cometido los errores señalados, *se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 30 de septiembre de 1959.*