En última instancia, la pregunta que subyace muchos de los proble-mas constitucionales es: ¿quién tiene el poder para qué?(1)

Raúl Serrano Geyls

Nos corresponde examinar por primera vez el alcance de la Ley Núm. 138-2005 y resolver si la Asamblea Legisla-tiva transgredió el principio de separación de poderes al aprobar con aplicación retroactiva dicho estatuto, el cual le concedió jurisdicción primaria y exclusiva a la Junta Re-glamentadora de Telecomunicaciones para dilucidar todo reclamo sobre los servicios de telecomunicaciones y viola-ciones a las disposiciones de la Ley de Telecomunicaciones de Puerto Rico de 1996, infra. Ello a la luz de la desesti-mación de un pleito de clase que perseguía impugnar un cargo mensual por el servicio de teletecla, el cual estaba pendiente ante el Tribunal de Primera Instancia al mo-mento de aprobarse la legislación que nos ocupa.
I
El 17 de noviembre de 2003, los demandantes y peticio-narios de epígrafe presentaron un pleito de clase contra la Puerto Rico Telephone Company (P.R.T.C.). En lo perti-nente, alegaron que la P.R.T.C. cobró durante siete (7) años un cargo mensual por el servicio de teletecla que no se basó en el costo de proveer dicho servicio. Por lo tanto, adujeron que el cobro del referido cargo infringió la Ley de Telecomu-nicaciones de Puerto Rico de 1996, Ley Núm. 213-1996 (27 L.P.R.A. sec. 265 et seq.) (en adelante Ley de *672 Telecomunicaciones). Por último, solicitaron el reembolso de una cantidad no menor de $105,350, más costas, intereses y el 25% de honorarios de abogado. Esto en conformidad con la Ley Núm. 118 de 25 de junio de 1971, según enmendada por la Ley Núm. 269-2002 (32 L.P.R.A. sec. 3343).
El 30 de diciembre de 2003, la P.R.T.C. contestó la demanda. En lo atinente, negó que el cargo tarifario fuera ilegal y alegó como defensa afirmativa que la acción estaba prescrita.
Posteriormente, la P.R.T.C. presentó una moción de sen-tencia sumaria. En ella adujo que el contrato entre la P.R.T.C. y los consumidores establecía un término de quince (15) días para pagar u objetar los importes. Sin embargo, alegó, los demandantes nunca objetaron o presenta-ron querella ante la P.R.T.C. con relación a los cargos de teletecla que le eran facturados. Por lo tanto, la P.R.T.C. solicitó que se desestimara el pleito por sus defensas de prescripción, caducidad e incuria. Luego de varios trámites procesales, el 3 de mayo de 2005, el Tribunal de Primera Instancia certificó el pleito como de clase.(2)
Entretanto, la Asamblea Legislativa enmendó la Ley de Telecomunicaciones mediante la aprobación de la Ley Núm. 138-2005 codificada en 27 L.P.R.A. secs. 265a y 269j-l. Esta ley concedió jurisdicción primaria y exclusiva a la Junta Reglamentadora de Telecomunicaciones para ventilar reclamaciones sobre todos los servicios de teleco-municaciones y violaciones a las disposiciones de la Ley de Telecomunicaciones. Igual jurisdicción le dispensó para otorgar compensaciones por daños y peijuicios. Pero, ade-más, la Ley Núm. 138-2005, supra, estableció un límite a la compensación total que se podría conceder en pleitos de *673 clase. Así, impuso como tope a este tipo de reclamación la suma que fuese menor entre $5,000 o el medio por ciento (1/2%) de los activos del querellado. Esto último según los libros del propio querellado. Por último, la aludida ley dis-puso que surtiría efecto sobre cualquier procedimiento pendiente o que se presentara con posterioridad a su aprobación.
Así las cosas, el 11 de enero de 2006, la P.R.T.C. pre-sentó una moción de desestimación en la cual sostuvo que en conformidad con la Ley Núm. 138-2005, supra, el Tribunal de Primera Instancia carecía de jurisdicción para aten-der el reclamo de la clase. Ello, pues la aludida ley concedió jurisdicción primaria y exclusiva a la Junta de Telecomu-nicaciones para atender pleitos como el de marras.(3)
Los demandantes se opusieron a la desestimación y ar-güyeron que la Ley Núm. 138-2005, supra, era inconstitu-cional en cuanto limitaba el derecho de las clases a recibir una compensación total. Asimismo, adujeron que la refe-rida ley violentaba el derecho a la libre asociación; el prin-cipio de separación de poderes; el debido proceso de ley; la igual protección de las leyes; menoscababa las obligaciones contractuales, y no se podía aplicar retroactivamente.
Luego de celebrar una audiencia para escudriñar las posturas de ambas partes y después de evaluar sus respec-tivos escritos, el 5 de mayo de 2006, el Tribunal de Primera Instancia emitió una sentencia en la cual desestimó la demanda. Ello, debido a que la Ley Núm. 138-2005, supra, concedió jurisdicción primaria y exclusiva a la Junta Re-glamentadora de Telecomunicaciones para dilucidar cual-quier pleito en el que se alegaran violaciones a la Ley de Telecomunicaciones. Del mismo modo, reconoció que del texto de la ley surge su aplicación inmediata a pleitos pen-dientes o interpuestos con posterioridad a la fecha de su *674 aprobación. En cuanto al planteamiento constitucional, el foro primario sostuvo que la Asamblea Legislativa poseía el poder inherente de aprobar legislación que limitara la jurisdicción del tribunal.
Inconformes, los demandantes presentaron un recurso de apelación ante el Tribunal de Apelaciones. El 19 de enero de 2007, el foro apelativo intermedio emitió una sen-tencia mediante la cual confirmó la desestimación del pleito. Fundamentado en nuestros precedentes, el Tribunal de Apelaciones concluyó que la Asamblea Legislativa tiene facultad para designar la exclusividad del foro para aten-der una reclamación. Sostuvo que en aquellos casos en que expresamente la ley confiere jurisdicción a un organismo administrativo sobre un asunto particular, los tribunales quedan privados de autoridad para dilucidar el caso en pri-mera instancia. Por último, el foro apelativo intermedio resolvió que la enmienda realizada mediante la Ley Núm. 138-2005, supra, surgía como un ejercicio válido de la Asamblea Legislativa y que los demandantes no quedaban huérfanos de remedio. Ello, pues de éste proceder la Junta Reglamentadora de Telecomunicaciones sería el organismo que lo otorgaría en primera instancia.
Nuevamente inconformes, los demandantes presenta-ron un recurso de certiorari ante nos en el cual aducen que los foros a quo erraron al desestimar de acuerdo con la Ley Núm. 138-2005, supra, la reclamación de las clases. Alegan que dicha ley no se puede aplicar retroactivamente y que la limitación a la compensación que en su día podría tener la clase es inconstitucional. Además, arguyen que la Ley Núm. 138-2005, supra, violenta la separación de poderes; el debido proceso de ley; la libertad de asociación; la igual protección de las leyes, y menoscaba las obligaciones contractuales.
El 16 de marzo de 2007 emitimos una resolución en la cual expedimos el auto de certiorari. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.
*675 II
A. Ley Núm. 138
Examinemos la Ley Núm. 138-2005 y su trasfondo histórico. En 1996, la Asamblea Legislativa aprobó la Ley de Telecomunicaciones de Puerto Rico con miras a eliminar las barreras de competitividad en el campo de las telecomunicaciones y abrir dicho mercado a la libre competencia. Caribe Comms., Inc. v. P.R.T.Co., 157 D.P.R. 203, 216 (2002). Esta ley permite la imposición de multas y otras medidas correctivas a quienes incumplan con sus disposiciones. Además, creó la Junta Reglamentadora de Telecomunicaciones y le confirió los poderes necesarios para reglamentar los servicios de telecomunicaciones, dar cumplimiento y administrar lo relativo a la referida ley.
La Junta Reglamentadora de Telecomunicaciones quedó así investida de varias facultades, entre las que figuran: (1) imponer multas administrativas por violaciones a su ley habilitadora, reglamentos y órdenes; (2) exigir cualquier clase de información que sea necesaria para el adecuado cumplimiento de sus facultades; (3) ordenar el cese de actividades o actos en violación de cualquier disposición de la Ley de Telecomunicaciones; (4) imponer y ordenar el pago de costas, gastos y honorarios por otros servicios profesionales y de consultoría en los que se incurrió en los procedimientos adjudicativos ante la Junta, y (5) ordenar que se realice cualquier acto en conformidad con la Ley de Telecomunicaciones. Véase 27 L.P.R.A. sec. 267f(b).
Al aprobar la Ley de Telecomunicaciones, el legislador tuvo la intención de conferirle amplios poderes a la Junta para corregir la conducta anticompetitiva de las compañías. P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269, 289 (2000). No obstante lo anterior, en conformidad con la Ley de Telecomunicaciones, la Junta Reglamentadora de Telecomunicaciones no tenía facultad para conceder daños *676 y perjuicios. Así lo resolvimos en Caribe Comms., Inc. v. P.R.T.Co., supra, págs. 225-229.
Ante tal escenario, la Asamblea Legislativa aprobó la Ley Núm. 138-2005, supra, para enmendar la Ley de Telecomunicaciones y otorgarle a la Junta Reglamentadora de Telecomunicaciones jurisdicción primaria exclusiva para determinar si existe alguna violación a la ley, y para estimar y conceder compensación en concepto de daños y perjuicios causados a los usuarios consumidores de servicios de telecomunicaciones y cable, como consecuencia de violaciones a la mencionada ley, sus reglamentos y/o al contrato de servicio.(4)
En la Exposición de Motivos de la Ley Núm. 138-2005, supra, la Asamblea Legislativa reconoció que a pesar de que la Ley de Telecomunicaciones concedió jurisdicción pri-maria exclusiva a la Junta Reglamentadora de Telecomu-nicaciones sobre todo asunto relacionado a los servicios de telecomunicaciones, nuestro ordenamiento jurídico obli-gaba a presentar ante el Tribunal de Primera Instancia cualquier controversia relacionada con los servicios de te-lecomunicaciones y cable en la cual se causaran daños y perjuicios. El legislador advirtió que tal limitación a la ju-risdicción de la Junta ponía en riesgo la estabilidad de la industria al crear dos foros, uno con y otro sin el peritaje necesario, que interpretan simultáneamente esta legisla-ción tan compleja. Véase Exposición de Motivos de la Ley Núm. 138-2005, supra. Por ello, la Asamblea Legislativa estimó necesario aclarar este asunto y disponer que la in-terpretación de la Ley de Telecomunicaciones debía recaer, en primera instancia, en la Junta. Id. Esto, por ser la Junta “un foro especializado con el conocimiento técnico *677 necesario para atender cualquier reclamación relacionada a servicios de telecomunicaciones y cable”. íd.
De acuerdo con la Exposición de Motivos de la Ley Núm. 138-2005, supra, la Asamblea Legislativa justipreció que otorgar autoridad a la Junta Reglamentadora de Telecomunicaciones para estimar y conceder daños y peijuicios “promueve un mayor acceso de la ciudadanía al foro administrativo para reclamar compensación ...”. Ahora bien, el legislador advirtió que existen casos de mayor complejidad que requieren el rigor y las garantías procesales del foro judicial. íd. Por lo tanto, entendió necesario limitar la jurisdicción de la Junta de conceder daños y peijuicios hasta un máximo de $5,000. Al así hacerlo, explicó que “[c]ualquier reclamación sobre el máximo establecido será atendido en primera instancia por la Junta para determinar si hubo una violación a la Ley de Telecomunicaciones, la reglamentación de esta agencia y/o el contrato entre el consumidor y la compañía de telecomunicaciones y/o cable”. íd. Manifestó, además, que “[d]e la Junta resolver, luego de concluido el proceso adjudicativo, que hubo alguna violación, el consumidor podrá reclamar daños y perjuicios ante el Tribunal de Primera Instancia que determinará si existen y la cuantía de los mismos”. íd. Hasta aquí el contenido de la Exposición de Motivos. Resta indagar las disposiciones específicas del estatuto.
El Artículo 1 de la Ley Núm. 138-2005, supra, añadió un nuevo Artículo 12-A al Capítulo III de la Ley de Telecomunicaciones. En lo pertinente, este artículo dispo-nes lo siguiente:
Artículo 12-A. -Casos de Daños Presentados por los usuarios:
La Junta Reglamentadora de Telecomunicaciones tendrá ju-risdicción primaria y exclusiva para adjudicar toda reclama-ción de daños y perjuicios causados por cualquier persona natural o jurídica a un usuario, excepto reclamaciones de compañías de telecomunicaciones y cable entre sí, como conse-cuencia de la violación de las disposiciones de esta Ley, los reglamentos aprobados por la Junta y el contrato de servicio *678 entre el usuario y la compañía de telecomunicaciones o cable, hasta la suma máxima de cinco mil (5,000) dólares por incidente. El término usuario comprenderá a las personas que reciben servicios de telecomunicaciones y cable que no sean compañías de telecomunicaciones y cable. En estos casos, la Junta Reglamentadora de Telecomunicaciones tendrá jurisdic-ción primaria exclusiva. En los casos de reclamaciones sobre el máximo establecido de compensación reclamada, la Junta tendrá jurisdicción primaria y exclusiva para determinar si existe una violación a esta Ley, a sus reglamentos y/o al con-trato de servicio. Si luego de celebrada una vista en su fondo determina que existe una violación, emitirá Resolución y Or-den describiendo la misma. Una vez advenga final y firme, el usuario podrá presentar demanda de daños y perjuicios ante el Tribunal de Primera Instancia acompañando copia certifi-cada de la Resolución y Orden de la Junta. El Tribunal deter-minará si existen daños y perjuicios como resultado de dicha violación y concederá aquellos que se establezcan con prueba suficiente. En ambos casos, la Junta señalará por lo menos una vista de mediación para intentar lograr una solución rá-pida y justa a las reclamaciones de los usuarios. No obstante lo dispuesto en cualquier otra disposición de esta o cualquier otra Ley, la Junta tendrá jurisdicción primaria exclusiva para dilucidar cualquier pleito de clase presentado o que a partir de la vigencia de esta Ley se presenten por los usuarios por viola-ciones a las disposiciones de esta Ley y los reglamentos de la Junta, o reclamaciones relacionadas con servicios de telecomu-nicaciones y cable, siempre que no sean compañías de teleco-municaciones y cable entre sí. La compensación total que po-drá concederse en estos casos, nunca excederá la cantidad que sea menor entre cinco millones de dólares ($5,000,000) o el medio (1/2) por ciento de los activos del querellado según sus libros, la que sea menor. A los pleitos de clase aquí menciona-dos no le aplicarán las disposiciones de la Ley Núm. 118 de 25 de junio de 1971, según enmendada. La Junta aprobará regla-mentación para la adjudicación de los casos de pleito de clase, la cual tendrá que estar acorde con los parámetros estableci-dos por la jurisprudencia a tales efectos. (Enfasis nuestro.) Artículo 1 de la Ley Núm. 138-2005, supra.
En lo atinente a la causa ante nos, del texto antes citado surge que la Junta Reglamentadora de Telecomunicaciones tendrá jurisdicción primaria y exclusiva para dilucidar cualquier pleito de clase presentado o que a partir de la vigencia de la Ley Núm. 138-2005, supra, sea instado por *679 violaciones a la Ley de Telecomunicaciones y sus reglamentos. Igualmente, la Ley Núm. 138-2005, supra, establece un límite de compensación de $5,000 que la Junta puede conceder y dispone que cualquier pleito de clase que se presente ante ésta tendrá un límite de com-pensación que nunca excederá la cantidad que sea menor entre $5,000,000 o el medio por ciento (1/2%) de los activos de la parte querellada.
Por último, el Artículo 3 de la Ley Núm. 138-2005, supra, establece que dicha ley “comenzará a regir inmediata-mente después de su aprobación, y surtirá efecto sobre cualquier procedimiento pendiente a esta fecha o que se radique con posterioridad a la misma”. 27 L.P.R.A. sec. 265a n.
B. Retroactividad de las leyes
El Artículo 3 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3, establece que “[l]as leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario”. Esta disposición tiene el efecto de una regla general, de interpretación estatutaria, por lo que no constituye un principio rígido de aplicación absoluta. Vélez v. Srio. de Justicia, 115 D.P.R. 533, 542 (1984); Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. 378, 384-385 (1973).
Hemos resuelto que la intención del legislador de darle efecto retroactivo a una ley puede ser expresa o tácita. Torres Rodríguez v. Carrasquillo Nieves, 177 D.P.R. 728, 758 (2009); Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640, 648 (2007). Dicho de otra manera, la retroactividad, por ser un acto excepcional, “debe aparecer expresamente o surgir claramente del estatuto”. Torres Rodríguez v. Carrasquillo Nieves, supra, pág. 758.
Si la nueva norma tiene el efecto de corregir o mejorar una anterior para conformarla más adecuadamente al estatuto que pretende enmendar, la retroactividad de la nueva norma no la hace nula de por sí. Véase *680 Licorería Trigo, Inc. v. Srio. Hacienda, 94 D.P.R. 270, 281 (1967). Claro está, el efecto retroactivo por disposición ex-presa de la ley no podrá menoscabar obligaciones contrac-tuales ni perjudicar derechos adquiridos al amparo de al-guna legislación anterior. Domínguez Castro et al. v. E.L.A. I, 178 D.P.R. 1, 130 (2010); Consejo Titulares v. Williams Hospitality, 168 D.P.R. 101, 108-109 (2006).
En concordancia con lo anterior, la regla de hermenéutica que impide que la legislación retroactiva afecte derechos adquiridos aplica solamente a disposiciones estatutarias de carácter sustantivo y no a aquellas de carácter procesal. Véanse: Cortés Córdova v. Cortés Rosario, 86 D.P.R. 117,123 (1962); R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 400. Éstas tienen efecto retroactivo y se deben aplicar con preferencia, por cuanto suponen mayor protección de los derechos en litigio. J. Castán Tobeñas, Derecho civil español, común y foral, 12ma ed., Madrid, Ed. Reus, 1982, T. I, Vol. I, pág. 623, esc. 1. Así, y por lo general, las disposiciones procesales tienen efecto retroactivo y aplican a casos pendientes, salvo que la Asamblea Legislativa disponga lo contrario. Ortiz v. Fernós López, 104 D.P.R. 851, 852 (1976); Reyes v. Mayagüez Transport, 86 D.P.R. 273, 280-281 (1962); Bernier y Cuevas Segarra, op. cit., pág. 400.
De igual forma, los estatutos que versan sobre la jurisdicción son de interés público y no están comprendidos dentro de las disposiciones del Artículo 3 del Código Civil, supra, por lo que comienzan a regir retroactivamente. J.R.T. v. A.E.E., 133 D.P.R. 1, 13 (1993). No obstante lo anterior, si el legislador no ha tenido la intención de apli-car retroactivamente una ley procesal o si resulta práctica-mente imposible aplicarla así, tal legislación tendrá efectos prospectivos. Véase Mason v. White Star Bus Line, 53 D.P.R. 337, 340-344 (1938). Claro está, la aplicación en el *681 tiempo de cualquier ley dependerá de la validez de la pro-pia ley.
C. Separación de poderes y validez de legislación con efectos en pleitos pendientes
El principio de separación de poderes en Puerto Rico se encuentra expresamente consagrado en la Sección 2 del Artículo 1 de la Constitución de Puerto Rico, L.P.R.A., Tomo 1. Este principio persigue salvaguardar la independencia de cada rama del Gobierno y proteger la libertad de los individuos frente a una peligrosa acumulación de poder en una sola rama. Véanse: Colón Cortés v. Pesquera, 150 D.P.R. 724, 750 (2000); Union Pacific Railroad Company v. United States, 99 U.S. 700 (1878) (Sinking Fund Cases). Mediante su empleo se delimitan “los contornos de los poderes públicos para evitar la concentración indebida de poderes y promover el más eficiente funcionamiento del sistema”. Nogueras v. Hernández Colón, 127 D.P.R. 405, 426-427 (1990). En varias ocasiones, incluso antes de la aprobación de la Constitución de Puerto Rico, hemos considerado si el poder legislativo interfiere indebidamente con la función judicial al aprobar legislación que tenga repercusiones en un pleito pendiente.
En Suárez v. Tugwell, Gobernador, 67 D.P.R. 180 (1947), mientras se tramitaba un pleito en los tribunales en el que ya se había concedido un interdicto preliminar, la Asam-blea Legislativa aprobó la Ley Núm. 2 de 25 de febrero de 1946, “la cual prohibió la acción del contribuyente y privó a los tribunales de Puerto Rico de ‘jurisdicción para conocer, o continuar conociendo si se hubiera ya iniciado’, cualquier acción sobre la constitucionalidad de una ley, resolución o actuación ejecutiva autorizada por ley, cuando el deman-dante base su legitimación únicamente en su carácter de contribuyente”. Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 97 (1998).
Los demandantes argumentaron ante nos que la Ley Núm. 2, supra, era nula y que no se podía aplicar al caso *682 que se encontraba en trámite cuando se aprobó la ley. Suárez v. Tugwell, Gobernador, supra, pág. 183. Resolvimos en aquella ocasión que la ley en cuestión era válida y que podía aplicarse al pleito pendiente. Expresamos que la Asamblea Legislativa tiene el poder para limitar la juris-dicción de los tribunales para expedir interdictos en una clase específica de controversias y que una legislación res-trictiva, a tales efectos, es válida aun al aplicarse a casos pendientes. Id., pág. 184. Ciertamente, de lo que trataba la legislación era de prohibir la concesión del remedio de interdicto. Como resultado, confirmamos la sentencia que emitió el entonces tribunal de distrito, la cual dejó sin efecto el interdicto preliminar, y archivó el caso debido a la aprobación y vigencia de la ley allí en controversia.
Posteriormente, en Sunland Biscuit Co. v. Junta Salario Mínimo, 68 D.P.R. 371 (1948), mientras se encontraba pendiente un caso ante nuestra consideración, la Asamblea Legislativa aprobó la Ley Núm. 451 de 14 de mayo de 1947, la cual tuvo el efecto de convalidar el decreto man-datorio impugnado. El 25 de junio de 1947 emitimos una sentencia en la que anulamos el aludido decreto. Sin embargo, en reconsideración determinamos que la Ley Núm. 451, supra, la cual entró en vigor el 1 de julio de 1947, de manera clara y terminante había convalidado y ratificado el decreto mandatorio en pugna. Expresamos que la Asam-blea Legislativa tiene facultad para aprobar estatutos re-parativos de esta naturaleza, Sunland Biscuit Co. v. Junta Salario Mínimo, supra, págs. 378-379, y reconocimos que nuestra sentencia aún no había creado estado de derecho alguno a favor de la recurrente.
Además de lo anterior, sostuvimos que la Ley Núm. 451, supra, "específicamente hac[ía] referencia a decretos emi-tidos con anterioridad a la aprobación de [dicha ley] y ésta lo fu[e] en 14 de mayo de 1947, que es fecha anterior a aquélla en que se dictó la sentencia de este Tribunal. Bajo estas condiciones el estatuto curativo resultó completa- *683 mente válido y constitucional”.(5) Sunland Biscuit Co. v. Junta Salario Mínimo, supra, pág. 379.
En Misión Ind. P.R. v. J.P., supra, el entonces Tribunal de Circuito de Apelaciones emitió una sentencia en la que revocó una resolución de la Junta de Planificación que aprobó una consulta de ubicación para el Superacueducto de la Costa Norte. Asimismo, ordenó la paralización total de las obras iniciadas hasta que se cumpliera con la legis-lación y reglamentación aplicables. Poco tiempo después, la Asamblea Legislativa aprobó y el Gobernador firmó la Ley Núm. 19 de 12 de junio de 1997 (22 L.P.R.A. sec. 451 et seq.), para ordenarle a la Autoridad de Acueductos y Alcan-tarillados continuar con la construcción del referido pro-yecto, eximirle de cumplir con la Ley de Procedimiento Ad-ministrativo Uniforme del Estado Libre Asociado de Puerto Rico y establecer nuevos procedimientos y requisi-tos para la autorización del proyecto y para la revisión judicial.
En aquel entonces, este Tribunal resolvió que la Ley Núm. 19-1997, supra, era inconstitucional porque violaba el principio de separación de poderes al interferir de forma no permisible con el ejercicio del Poder Judicial. Ex-presamos que la Asamblea Legislativa puede, en el ejercicio de su poder inherente, afectar litigios pendientes sin contravenir el principio de la separación de poderes, siempre que lo haga en el marco de la enunciación de una nueva norma de derecho y no meramente de la adjudicación de una controversia específica. Misión Ind. P.R. v. J.P., supra, págs. 110-112. Esta Curia estimó que dicha ley perseguía adjudicar la validez de los permisos de ubicación, pues pretendía dictar el resultado del caso que se encon- *684 traba ante la consideración de este Tribunal. Igualmente, expresamos lo siguiente:
El poder de revisar una sentencia le corresponde a la Rama Judicial. Es una facultad que integra la entraña misma del poder que la Sec. 1 del Art. V de la Constitución, supra, les asigna exclusivamente a los tribunales. No es una facultad compartida con el Poder Legislativo, ni trasladable a éste por razón alguna. Si bien es cierto que el principio de la separa-ción de poderes debe ser aplicado flexiblemente, esa flexibili-dad “no significa que lo que es la esencia de la función judicial pueda ser destru[i]do, convirtiendo el poder para decidir en una débil oportunidad para consultar y recomendar”. Misión Ind. P.R. v. J.P, supra, pág. 112.
En Colón Cortés v. Pesquera, supra, varias comunidades acudieron ante nos mediante recurso de certiorari para cuestionar la determinación del entonces Tribunal de Cir-cuito de Apelaciones de que el recurso de mandamus que ellas presentaron era improcedente. Argumentaron que la Autoridad de Carreteras y Transportación (ACT), incumplió con emitir una válida Declaración de Impacto Ambiental final (DIA), para la totalidad del proyecto vial conocido como “Ruta 66”. Además, señalaron que la ACT ignoró los reque-rimientos del panel examinador de la Junta de Calidad Am-biental y los señalamientos que específicamente hiciéramos en Colón y otros v. J.C.A., 148 D.RR. 434 (1999). En Colón Cortés v. Pesquera, supra, emitimos una resolución parali-zando las obras de construcción. Mientras se encontraba pendiente para nuestra consideración la Petición de certio-rari, la Asamblea Legislativa aprobó dos (2) leyes —Ley Núm. 323-1999 y Ley Núm. 324-1999— con el propósito de modificar el derecho sobre los procedimientos para obtener una DIA y permitir el fraccionamiento de proyectos. La ACT presentó una moción de desestimación en la que alegó que en conformidad con las aludidas leyes, este Tribunal carecía de jurisdicción para considerar el recurso.
En aquel entonces, este Tribunal resolvió que el objetivo de la legislación en cuestión consistía en obviar *685 “los parámetros dispuestos en una Opinión anterior de este Tribunal”. Colón Cortés v. Pesquera, supra, pág. 749. Ex-presamos que “[l]o importante al determinar si cierta ac-tuación legislativa infringe el principio de separación de poderes, es si la intención clara y específica de la ley fue afectar el resultado de un pleito particular”. (Énfasis suprimido.) Id., pág. 764. Resolvimos que la Sección 1 de la Ley Núm. 324-1999, supra, única de las enmiendas aplica-ble a la controversia ante nuestra consideración, resultaba inconstitucional en su aplicación por contravenir el princi-pio de separación de poderes. De igual forma, esta Curia concluyó que la Asamblea Legislativa perseguía “revocar la determinación de este Tribunal en Colón Cortés I, supra, sobre las deficiencias de la DIA-P y el suplemento prepa-rados por la ACT”. íd., pág. 765. Concluimos que “[l]a con-secuencia de la legislación ante nuestra consideración [era] liberar a la ACT de los deberes ministeriales que, según determinamos en Colón Cortés I, supra, todavía no había cumplido”. íd., pág. 764. Además, manifestamos lo si-guiente:
Este Tribunal, como custodio e intérprete final de nuestra Constitución, la va a proteger y no va a permitir que acciones como la que hoy nos ocupa opaquen o disminuyan su valor, avalando que la parte que resulte o pudiera resultar perdidosa en un proceso judicial procure legislación de encargo que le per-mita continuar con una acción declarada ilegal por la Rama Judicial. Es decir, no podemos consentir que la Legislatura, con el aval del Gobernador, se convierta en un Tribuna) Supremo de facto, revocando acciones tomadas por este Foro. íd.
Tanto Misión Ind. P.R. v. J.P., supra, como Colón Cortés v. Pesquera, supra, son vividos ejemplos de que cualquier intento de la Asamblea Legislativa para dejar sin efecto una orden judicial en un caso pendiente ante nuestra consideración será considerado inconstitucional por violentar el principio de separación de poderes. Ciertamente, ninguna Asamblea Legislativa “tiene la facultad *686 para intervenir con el ejercicio de la función judicial, por lo que no puede dejar sin efecto, modificar, o menoscabar una sentencia final emitida por un tribunal que tenga jurisdic-ción para dictarla”. Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 726 (2000). Véase P.R. Tobacco Corp. v. Buscaglia, Tes., 62 D.P.R. 811, 822 (1944).
D. Jurisdicción primaria y exclusiva
Los foros judiciales de Puerto Rico son de jurisdic-ción general y tienen autoridad para entender en cualquier causa de acción que presente una controversia para adjudicación. Mun. Arecibo v. Mun. Quebradillas, 161 D.P.R. 109, 114 (2004); Junta Dir. Cond. Montebello v. Fernández, 136 D.P.R. 223, 230 (1994). Empero, los tribunales pueden ser privados de su autoridad para entender en algún asunto particular si así lo dispone expresamente algún es-tatuto o si ello surge del mismo por necesaria implicación, íd.; Rosado v. Registrador, 71 D.P.R. 553, 556 (1950). En específico, “[c]uando existe un estatuto que expresamente le confiere la jurisdicción a un órgano administrativo sobre de-terminado tipo de asuntos, los tribunales quedan privados de toda autoridad para dilucidar el caso en primera instancia”. Rivera Ortiz v. Mun. de Guaynabo, 141 D.P.R. 257, 268 (1996). Del mismo modo, hemos expresado que “la designación de un foro administrativo con jurisdicción ex-clusiva es perfectamente compatible con la revisión judicial de la cual puede ser objeto posteriormente la decisión del organismo”. Id.
III
Debido a los múltiples planteamientos presentados, atenderemos por partes la discusión de la presente causa. Consideremos en primer lugar el asunto jurisdiccional.
Las clases alegan que no procede la desestimación de su reclamación debido a que la Ley Núm. 138-2005, supra, la *687 cual dispone que será la Junta Reglamentadora de Teleco-municaciones quien tendrá jurisdicción primaria y exclu-siva para atender todo pleito relacionado con la Ley de Telecomunicaciones, y no el Tribunal de Primera Instancia, transgrede el principio de separación de poderes por afec-tar retroactivamente un pleito pendiente y usurpar el po-der de los tribunales para conceder daños. En fin, cuestio-nan que el foro primario haya desestimado su reclamación para que ésta fuera presentada ante la Junta Reglamenta-dora de Telecomunicaciones. Veamos.
Uno de los propósitos de la Asamblea Legislativa al apro-bar la Ley Núm. 138-2005, supra, consistió en concederle jurisdicción primaria y exclusiva a la Junta Reglamenta-dora de Telecomunicaciones para determinar si existe una violación a la ley que a bien tiene administrar y, a su vez, estimar y conceder compensaciones por daños y peijuicios causados por violaciones a la Ley de Telecomunicaciones. De esta forma el legislador entendió que mejor se adelantaba su intención de promover un mayor acceso de la ciudadanía al foro administrativo para reclamar tales daños y, al mismo tiempo, salvaguardar la estabilidad de la industria al dispo-ner que en vez de dos foros que interpretaran simultánea-mente la misma ley, el referido cometido recaería en pri-mera instancia en la Junta Reglamentadora de Telecomunicaciones. Ello, debido a su conocimiento técnico y especializado.
De entrada, no cabe discusión respecto al poder de la Asamblea Legislativa para otorgar jurisdicción primaria y exclusiva a un organismo administrativo. Rivera Ortiz v. Mun. de Guaynabo, supra. Tampoco sobre la potestad de la Asamblea Legislativa para aprobar una ley y concederle expresamente efectos retroactivos, siempre que no afecte derechos adquiridos, menoscabe obligaciones contractuales o viole el principio de separación de poderes.
Recuérdese que la Asamblea Legislativa puede, en el ejercicio de su poder inherente, afectar litigios pendientes *688 sin transgredir el principio de separación de poderes, siem-pre que lo haga en el marco de la enunciación de una nueva norma de derecho y no meramente de la adjudica-ción de una controversia específica. Misión Ind. P.R. v. J.P., supra. Ciertamente, esta norma puede ser de intrincada aplicación, por varias razones. Primero, el derecho se mo-difica por alguna razón y en pocas ocasiones el legislador actúa con entera abstracción de la realidad forense. Se-gundo, en esas ocasiones, el legislador puede enunciar una nueva norma de derecho sin “la intención clara y específi-ca” de adjudicar o afectar un pleito pendiente, Colón Cortés v. Pesquera, supra, pág. 764, pero tal puede ser el resul-tado una vez se aplique la ley al caso. (Enfasis suprimido.) En tales casos, descifrar cuál es la intención legislativa “ ‘es a lo sumo una conjetura judicial’ ”, por lo que debemos realizar un laborioso esfuerzo por determinar esa intención mediante la más correcta conjetura posible. Tugwell, Gobernador v. Corte, 64 D.P.R. 220, 228 (1944).
Es por estas razones que en atención a la norma en cuestión debemos también preguntarnos si la ley, o la dis-posición específica de la misma, afecta de forma impermi-sible el resultado del pleito en trámite. Dicha interrogante debemos atenderla de acuerdo con la realidad de que la disposición aquí discutida de la Ley Núm. 138-2005, supra, se aprobó en una etapa procesal distinta a las leyes anali-zadas en los casos de Misión Ind. P.R. v. J.P., supra, y Colón Cortés v. Pesquera, supra.
Procede concentrarnos en esta ocasión en precisar que la acción legislativa afectará de forma impermisible un pleito cuando pretenda hacer determinaciones de hecho o dictar conclusiones de derecho sobre un caso en trámite en los tribunales. Véase Robertson u. Seattle Audubon Soc., 503 U.S. 429, 441 (1992).
En el caso ante nuestra consideración, luego de que la P.R.T.C. interpusiera una moción de sentencia sumaria en *689 el Tribunal de Primera Instancia, la Asamblea Legislativa aprobó la Ley Núm. 138-2005, supra, y le otorgó expresa-mente efectos retroactivos. La disposición de la ley aquí dis-cutida delegó jurisdicción primaria y exclusiva en la Junta Reglamentadora de Telecomunicaciones para determinar en todo caso si existe alguna violación a la Ley de Telecomuni-caciones y conceder daños y peijuicios. Ello, con las particu-laridades antes expresadas.
La consecuencia de esta disposición de la Ley Núm. 138-2005, supra, es que el foro para reclamar en primera instan-cia se transfirió a una agencia administrativa. El asunto es tan claro que las propias clases admiten que la “Ley 138 en que se basó la sentencia no tuvo el efecto de privar a los demandantes de su derecho a reclamar sino, más bien, a dirigir la reclamación a un foro distinto”. Véase Moción de Reconsideración presentada por los demandantes ante el Tribunal de Primera Instancia, Apéndice, pág. 2251.
En este caso, no hay sentencia que haya declarado ilegal el cargo de teletecla ni creado estado de derecho alguno a favor de las clases, Sunland Biscuit Co. v. Junta de Salario Mínimo, supra, o que pueda ser revocada por la disposición en controversia de la Ley Núm. 138-2005, supra. Tal dis-posición en manera alguna adjudica la reclamación de las clases, Misión Ind. P.R. v. J.P., supra, ni pretende hacer determinaciones de hecho o dictar conclusiones de derecho. Tampoco dicta el resultado del caso pendiente. Colón Cor-tés v. Pesquera, supra. Y mucho menos usurpa la facultad del Poder Judicial para estructurar remedios adecuados, pues se trata de una disposición que meramente regula la autoridad para entender en primera instancia un asunto particular sin prejuzgar los méritos de la causa. Colón Cor-tés v. Pesquera, supra. Ante las circunstancias particulares del presente caso, es forzoso concluir que la disposición en cuestión no afecta de forma impermisible el pleito pendiente.
*690 Nótese, además, que la nueva norma tuvo el efecto de aclarar y corregir la anterior para conformarla más ade-cuadamente a la Ley de Telecomunicaciones, pues ésta, a pesar de haberle concedido jurisdicción primaria a la Junta Reglamentadora de Telecomunicaciones sobre todo asunto relacionado con la Ley de Telecomunicaciones, no le confi-rió autoridad para conceder compensación por daños y perjuicios.(6) La Ley Núm. 138-2005, supra, remedió el asunto. Ahora verdaderamente se puede afirmar que la Junta Reglamentadora de Telecomunicaciones posee juris-dicción sobre todo asunto relacionado a su ley orgánica.
Del mismo modo, al examinar la disposición en cuestión notamos que el legislador atendió cuidadosamente nues-tros pronunciamientos en Caribe Comms., Inc. v. P.R.T.Co., supra. Allí mostramos preocupación por la concesión de au-toridad a la Junta Reglamentadora de Telecomunicaciones para otorgar daños en reclamaciones que pudieran alcan-zar cantidades económicas millonarias y abarcaran dere-chos propietarios. Esto, pues en esos casos “debe ser el foro judicial el llamado a garantizar el debido proceso de ley a través de todos los mecanismos y protecciones que caracte-rizan el procedimiento judicial”. íd., pág. 227. A saber: “un descubrimiento de prueba plenario, el uso de las reglas de evidencia, el juicio por un juez imparcial a través del crite-rio de la preponderancia de la evidencia en los casos civiles.” íd. Ahora, a diferencia de Caribe Comms., Inc. v. P.R.T.Co., supra, el legislador ha empleado “un lenguaje determinante, en torno a la delegación del poder adjudica-tivo en materia de daños” y limitó la jurisdicción de la *691 Junta de manera cónsona con nuestras expresiones. íd., pág. 228.
El tribunal siempre podrá ejercer su función judicial en este tipo de casos. Ello, pues la Junta Reglamentadora de Telecomunicaciones atenderá inicialmente todo reclamo re-lacionado con la Ley de Telecomunicaciones y, de resolver que en efecto se cometió alguna violación, concederá la compensación que proceda en concepto de daños y perjui-cios hasta un máximo de $5,000. En los casos en que el remedio exceda esta cantidad, el consumidor o los consu-midores podrán reclamar daños y perjuicios en el Tribunal de Primera Instancia. Además, el foro judicial también es-tará disponible para revisar una determinación adversa por la Junta. De esta forma, y en cuanto a este asunto, el legislador empleó suficientes salvaguardas para garanti-zar el debido proceso de ley.
En conformidad con lo anterior, concluimos que la dis-posición de la Ley Núm. 138-2005, supra, que concede ju-risdicción primaria y exclusiva a la Junta Reglamentadora de Telecomunicaciones, se puede aplicar retroactivamente a pleitos pendientes por ser esa la intención expresa de la Asamblea Legislativa y, particularmente, por no infringir el principio de separación de poderes. Ahora bien, en aras de evitar que ésta disposición de la Ley Núm. 138-2005, supra, aborte la continuación de la reclamación de las cla-ses de consumidores, referimos el caso y su expediente a la Junta Reglamentadora de Telecomunicaciones. Una deter-minación en contrario menoscabaría las salvaguardas que precisamente enmarcan la adopción del principio de sepa-ración de poderes.
IV
Las clases alegan, además, que el límite establecido por la Ley Núm. 138-2005, supra, a la compensación que en su día podrían tener es inconstitucional. En sintonía con lo *692 anterior, aducen que esta Ley menoscaba obligaciones con-tractuales, transgrede la libertad de asociación, el debido proceso de ley, y la igual protección de las leyes. Por su parte, la P.R.T.C. sostiene que estos asuntos no alcanzan la madurez necesaria para un pronunciamiento judicial.
Para atender apropiadamente estos señalamientos es necesario tener presente que el requisito de madurez para atender una controversia de índole constitucional forma parte de las doctrinas de autolimitación judicial.(7) Rexach v. Ramírez, 162 D.P.R. 130, 141 (2004). La prudencia y la no deseabilidad de opiniones consultivas fundamentan el requisito de madurez.(8) Id.; R. Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico, San Juan, Colegio de Abogados de Puerto Rico, 1986, Vol. I„ pág. 195.
En la doctrina de madurez “se examina la proximidad temporal o inminencia del daño alegado a través de un análisis dual: si la controversia sustantiva es apropiada para resolución judicial y si el daño es suficiente para re-querir adjudicación”. Crespo Claudio v. O.E.G., 173 D.P.R. 804, 814 (2008). Con ánimo no desprevenido, “[l]os tribu-nales deben determinar si existe realmente una controver-sia entre las partes de naturaleza justiciable, propia para un pronunciamiento judicial”. Rexach v. Ramírez, supra, pág. 142. Véase Asoc. Guardias Penales v. Srio. de Justi-cia, 87 D.P.R. 711, 713 (1963). Resulta determinante, pues, que la controversia se encuentre concretamente definida, de forma que el tribunal pueda justipreciarla en sus méritos. Rexach v. Ramírez, supra, pág. 142.
*693 En el caso ante nos, el ataque a la validez de la disposi-ción de la Ley Núm. 138-2005, supra, que establece un límite a la compensación total que en su día se podría con-ceder a las clases, depende de que en el futuro se pruebe que el cargo de teletecla se cobró ilegalmente. También de-pende de que se fije una cantidad de compensación que sobrepase el tope dispuesto por la Ley Núm. 138-2005, supra. Ninguna de las dos cosas ha ocurrido. Y ningún foro ha declarado la ilegalidad del cargo o ha impuesto compen-sación alguna que supere el tope impugnado para los plei-tos de clase.
Del mismo modo, aún no se ha atendido la alegación de la P.R.T.C. a los efectos de que las reclamaciones de las clases se encuentran prescritas o caducas. La P.R.T.C. aduce que cobró el cargo de teletecla hasta diciembre de 2003 y que en cumplimiento con la Ley Núm. 33 de 27 de junio de 1988 y la Ley de Telecomunicaciones, todas las facturas remitidas a los abonados advertían de la existencia de un plazo de quince (15) días para pagar u objetar los importes fijados, mediante ciertos trámites reglamentarios. Pero, según ar-guye, los miembros de las clases no formularon objeciones, querellas o reclamaciones dentro del plazo fijado, ni acudie-ron a foro alguno para impugnar la legalidad del cargo. Hoy, tal asunto también se encuentra irresoluto.
Por estas razones, y las circunstancias antes intimadas, el ataque constitucional está saturado de contingencias. Supone, pues, unos eventos indefinidos que se proyectan prospectivamente. Pero varias adjudicaciones faltan por concretarse. En el espacio temporal del orden de las cosas el reclamo es prematuro. Es por ello que la intervención judicial en este momento implicaría inmiscuirnos inapro-piadamente con una acción administrativa ulterior. Ante tal escenario fáctico, la controversia no se encuentra con-cretamente definida de manera que sea apropiada para ad-judicación judicial.
*694 Será la Junta Reglamentadora de Telecomunicaciones quien determine si la reclamación de las clases no está prescrita y si el cargo de teletecla se facturó ilegalmente. En su momento, y de ser necesario, no dudaremos en ex-presarnos de las clases prevalecer y de madurar el reclamo sobre el tope de compensación en pleitos de clase.
Por todo lo cual, concluimos que el cuestionamiento al límite establecido por la Ley Núm. 138-2005, supra, a la compensación que en su día podrían tener las clases no está maduro. Cónsono con lo anterior, y por su relación inextricable con ello, también carecen de madurez los plan-teamientos sobre violación a la libertad de asociación; al debido proceso de ley; la igual protección de las leyes, y sobre el menoscabo de las obligaciones contractuales.
En cuanto al único asunto maduro, resolvemos que la disposición de la Ley Núm. 138-2005, supra, que concede jurisdicción primaria y exclusiva a la Junta Reglamentadora de Telecomunicaciones no infringe la doctrina de separación de poderes y se puede aplicar retroactivamente a pleitos pendientes. Por ello, los foros a quo actuaron correctamente al desestimar la reclamación de las clases.
V
Por los fundamentos antes expuestos, se confirma la sen-tencia emitida por el Tribunal de Apelaciones y se remite el caso a la Junta Reglamentadora de Telecomunicaciones.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton no interviene. El Juez Asociado Señor Martínez Torres se inhibió.

 R. Serrano Geyls, Derecho constitucional de Estados Unidos y Puerto Rico, San Juan, Colegio de Abogados de Puerto Rico, 1986, Vol. I, pág. 571.

 Los demandantes se componen de tres (3) clases. La Clase A está compuesta de consumidores que tienen una línea en sus residencias (Residence Main Station). La Clase B la forman consumidores que tienen solamente una línea en sus negocios sin un cuadro telefónico (Business Main Station). Por último, la Clase C la confor-man consumidores que tienen multilíneas en sus negocios (Business Main Line).

 La moción de sentencia sumaria que presentó previamente la P.R.T.C. aún no había sido atendida.

 En conformidad con el Artículo 2 de la Ley Núm. 138-2005, “daños y perjui-cios” significa “exclusivamente los daños económicos sufridos por el consumidor que surgen directamente del incumplimiento de la [Ley de Telecomunicaciones], de los reglamentos aprobados por la Junta y/o el contrato de servicio entre el consumidor y la compañía de telecomunicaciones o cable televisión”. 27 L.P.R.A. sec. 265a(jj).

 Nótese que la ley impugnada se promulgó para enmendar sustancialmente la Ley Núm. 8 de 5 de abril de 1941, y la disposición que convalidó las actuaciones previas de la Junta de Salario Mínimo se estableció para darle continuidad de forma general a todos los actos realizados por los funcionarios de dicha Junta y no exclu-sivamente al decreto impugnado. Véase Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 98-99 (1998).

 Eso resolvimos en Caribe Comms., Inc. v. P.R.T.Co., 157 D.P.R. 203, 225-229 (2002). Pero allí también expresamos que una agencia administrativa puede tener autoridad para conceder daños y peijuicios si: (1) la ley expresamente le confiere tal facultad; (2) el poder está consignado implícitamente en su amplia facultad para conceder remedios, o (3) cuando está relacionado con el servicio que presta la agencia y se ejerce para adelantar los propósitos de su ley habilitadora. Id., págs. 215-216. Véanse, además: U.T.I.E.R. v. J.R.T., 99 D.P.R. 512 (1970); Quiñones v. San Rafael Estates, S.E., 143 D.P.R. 756 (1997).

 Desde EX.A. v. Aguayo, 80 D.P.R. 552, 596 (1958), hemos sostenido que como parte de la doctrina de autolimitación judicial no nos anticiparemos a decidir plan-teamiento constitucional alguno antes de que sea necesario hacerlo.

 Sabido es que la doctrina de opinión consultiva intenta evitar que se produz-can decisiones en el abstracto o bajo hipótesis de índole especulativa. Esto, pues no es función de los tribunales actuar como asesores o consejeros. Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715, 721 (1980).